Merrimack,
No. 5813.

CLIFTON R. BUTTRICK

*v.*

ARTHUR LESSARD & SONS, INC.

December 30, 1969.

*Upton, Sanders & Upton* and *Ernest T. Smith, III* (*Mr. Smith* orally), for the plaintiff.

*Hall, Zellers, Morse & Gallagher* (*Mr. Mayland H. Morse, Jr.* orally), for the defendant.

GRIFFITH, J. This case presents the question of whether a person sustaining personal injuries and property damage because of a defect in an automobile sold him by the defendant can recover without proof that the defendant was negligent.

Plaintiff was nonsuited at the conclusion of his opening statement and his exception was reserved and transferred by the Trial Court (*Bownes*, J.).

The outline of the plaintiff's case in the opening statement is adopted for the purpose of ruling on this exception. In the fall of 1962 plaintiff purchased from the defendant a 1962 Studebaker with a "new car guarantee." Delivery of the car was taken on October 19, 1962, a Friday, and it was not driven at night until the following Sunday. On Sunday, while driving with his lights on high beam the lights flickered and went out. At that time he stopped the car but determining that the lights would

function on low beam was able to drive home. Defendant under-took to remedy the defect and in the course of attempts to repair it replaced the sealed beams twice, replaced several dimmer switches, replaced the main switch and the brake light switch. The wiring and ground were checked and a factory representative was called to try and locate the difficulty. The plaintiff always returned the car to the defendant and after each repair discovered that the high beam would not function properly although the defendant would inform him that it thought it was fixed. Defendant was the only garage that ever worked on the lights.

In late November of 1963 plaintiff went deer hunting stopping at defendant's garage before he left for the purpose of having his car serviced and the lights again checked. The defendant did not have time to service his car or check his lights and he left on the trip without any work being done by the defendant. On December 2, 1963 plaintiff left Tamworth, N. H. in a snowstorm to travel to his home. On Route 106 in the area of the Canterbury-Loudon town line while traveling on low beam at approximately forty to fifty miles per hour he thought he saw a deer ahead. He then instinctively hit the switch to transfer the lights to high beam and they went out. Plaintiff was unable to get his lights on again and went off the road on the left-hand side damaging the car and sustaining personal injuries for which damages are sought.

Plaintiff makes no claim that the defendant was negligent and relies solely on his right to recover on either warranty or strict liability in tort. The two claims in warranty are based upon a claimed violation of an express warranty and an implied warranty as defined in the Uniform Commercial Code. RSA 382-A:2-313, 2-314. Plaintiff also claims that we should adopt the theory of strict liability in tort as defined in Restatement, Second, Torts *s.* 402-A.

The field of products liability has developed at a rapid pace but not without the usual attendant confusion surrounding the fall of ancient legal precepts. *Henningsen* v. *Bloomfield Motors, Inc.*, 32 N. J. 358, 161 A. 2d 69 permitting recovery for damage to an automobile resulting from a defect with no showing of negligence was a landmark case permitting recovery on an implied warranty. On the other side of the continent in 1963 in *Greenman* v. *Yuba Power Products, Inc.*, 59 Cal. 2d 57, 377 P. 2d 897 Chief Justice *Traynor* found for a plaintiff who was

injured by a defective power tool on the basis of strict liability. Meanwhile back in New Jersey in *Santor* v. *A & M Karagheusian, Inc.*, 44 N. J. 52, 207 A. 2d 305 recovery was allowed for a defective rug on the basis of strict liability rather than warranty. California followed with *Seely* v. *White Motor Company*, 63 Cal. 2d 9, 403 P. 2d 145 allowing recovery for commercial losses resulting from a defect on the breach of warranty theory. The *Seely* case criticized the *Santor* case and argued that only property and personal injury damages resulting from the defect should be recovered on strict liability.

The question of when a plaintiff should be permitted to recover under the law of warranty or under strict liability and whether strict liability has superseded the warranty approach has been argued by legal scholars with all the zeal, fury and abstruseness of medieval theologians. See Prosser, The Fall of the Citadel ( Strict Liability to the Consumer ), 50 Minn. L. Rev. 791; Donnelly, After the Fall of the Citadel: Exploitation of the Victory or Consideration of All Interests, 19 Syracuse L. Rev. 1; Shanker, Strict Tort Theory of Products Liability and the Uniform Commercial Code: A Commentary on Jurisprudential Eclipses, Pigeonholes and Communications Barriers, 17 W. Res. L. Rev. 5; Littlefield, Some Thoughts on Products Liability Law: A Reply to Professor Shanker, 18 W. Res. L. Rev. 10.

It is apparent that before the fine problems raised by the scholars have settled into clear rules as to when the approach is warranty and when strict liability many cases will have to settle into the books. Although the plaintiff is entitled on the basis of his opening statement to proceed on his counts of express and implied warranty he may also proceed on strict liability. This approach was recently presaged in *Elliott* v. *Lachance*, 109 N. H. 481, 256 A. 2d 153. See also, *Vandermark* v. *Ford Motor Co.*, 61 Cal. 2d 256, 391 P. 2d 168; Lascher, Strict Liability in Tort for Defective Products: The Road to and past Vandermark, 38 S. Cal. L. Rev. 30; Donovan, Recent Development in Products Liability Litigation in New England: The Emerging Confrontation Between the Expanding Law of Torts and The Uniform Commercial Code, 19 Me. L. Rev. 181.

Restatement, Second, Torts *s*. 402 - A reads as follows:

"( 1 ) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused

to the ultimate user or consumer, or to his property, if

"( a ) the seller is engaged in the business of selling such a product, and.

"( b ) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"( 2 ) The Rule stated in Subsection ( 1 ) applies although

"( a ) the seller has exercised all possible care in the preparation and sale of his product, and

"( b ) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

The rule requiring a person injured by a defective product to prove the manufacturer or seller negligent was evolved when products were simple and the manufacturer and seller generally the same person. Knowledge of the then purchaser, if not as complete as the seller's, was sufficient to enable him to not only locate the defect but to determine whether negligence caused the defect and if so whose. The purchaser of the present day is not in this position. How the defect in manufacture occurred is generally beyond the knowledge of either the injured person or the marketer or manufacturer. The basis for the present rule of strict liability is the "ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods." Restatement, Second, Torts *s.* 402-A, *comment* f.

To require plaintiff to prove negligence would impose in cases like the instant one an impossible burden since here neither plaintiff nor defendant was able to locate even the cause of the malfunction. The plaintiff is entitled to proceed upon strict liability in tort in this case if there is evidence from which a jury could find that the malfunction of the lights caused the accident and arose from a defect present at the time of purchase. See *Elliott* v. *Lachance, supra; Kerr* v. *Corning Glass Works* ( Minn. 1969 ) 169 N. W. 2d 587.

In view of the facts alleged in this case it is necessary to consider the defenses available. According to the allegations of the plaintiff the defect was immediately apparent and the defendant engaged in numerous attempts to rectify it. It also appears that the plaintiff continued to use the car with full knowledge of the defect and with no absolute assurance that it had been repaired.

In addition defendant would be entitled to have considered the conduct of the plaintiff in stepping on the switch with knowledge of the defect and his operation of the car after the lights failed.

The emphasis in products liability has been so concerned with rules of recovery that authorities relating to defenses are meagre. Annot. 13 A.L.R. 3d 1057, 1101; *Sweeney* v. *Matthews*, 94 Ill. App. 2d 6, 236 N. E. 2d 439; *Maiorino* v. *Weco Products Co.*, 45 N. J. 570, 214 A. 2d 18; *Dippel* v. *Sciano*, 37 Wis. 2d 443, 155 N. W. 2d 55; *Cintrone* v. *Hertz Truck Leasing & Rental Service*, 45 N. J. 434, 212 A. 2d 769; *Ferraro* v. *Ford Motor Co.*, 423 Pa. 324; Prosser, Torts ( 3d *ed.* ), *s.* 95; 2 Frumer-Friedman, Products Liability, *s.* 16-A [5][f].

Some confusion arises from the use of the phrase "assumption of the risk" in Restatement, Second, Torts *s.* 402-A, *comment* n. This has led some courts to state that contributory negligence is not a defense and then proceed to define the defense in terms of contributory negligence. See *Greeno* v. *Clark Equipment Co.* ( D.N.D. Ind. 1965 ) 237 F. Supp. 427, 429. The doctrine of "assumption of the risk" has been viewed with distaste by this court ( *Rosedoff* v. *Company*, 94 N. H. 114, 116, 47 A. 2d 574 ) and confined to common law actions of employee against employer. *Butler* v. *King*, 99 N. H. 150, 106 A. 2d 385. The problem is largely one of semantics ( *Cintrone* v. *Hertz Truck· Leasing & Rental Service, supra*; Harper & James, 2 The Law of Torts, *s.* 14.4, *n.* 4 ) and we see no difficulty in describing the defense in terms of contributory negligence.

Whether the evidence in this case will require a ruling that the plaintiff was negligent as a matter of law or the question will be one of fact for the jury cannot be foretold on the present state of the case. In any event the conduct of the plaintiff in continuing to use the car with knowledge of the defect and his operation of the car during the period leading up to the accident will bear on the question of his contributory negligence. Restatement, Second, Torts *s.* 402-A, *comment* n; 13 A.L.R. 3d 1057, *s.* 11, *p.* 1100. If the defendant sustains the burden of proof on this issue plaintiff will be barred from recovery by RSA 507:8.

*Plaintiff's exceptions sustained; remanded.*

GRIMES, J., dissented in part; the others concurred except DUNCAN, J., who concurred in the result.

GRIMES, J., *dissenting in part*: Whatever may be my views on the application of strict liability to a manufacturer against whom fault can at least be inferred from the existence of the defect ( see *Zellers* v. *Chase*, 105 N. H. 266, 197 A. 2d 206 ), I cannot subscribe to the broad sweep of the opinion in this case which will impose liability upon retailers who have done nothing wrong and against whom no wrong can be inferred because they had no means to control either the quality or design of the product or to discover any defect.

The court has abandoned "the consistent policy evidenced by an unbroken line of decisions in this state which . . . impose liability at common law for negligence only" ( *King* v. *Association*, 100 N. H. 212, 217, 123 A. 2d 151 ) because such a rule was "evolved when products were simple and the manufacturer and seller generally the same person." In its place it has adopted a rule with a basis vaguely referred to as an "ancient one" but which, if "ancient," must also have been evolved when products were simple and the seller and the manufacturer were generally the same person.

It is true that things are different now, but the change works against, not in favor of, the imposition by judicial fiat of liability without fault on the retailer who is a mere conduit between the manufacturer and the consumer. The articles he carries in his stock may not be his choice but that of his customers. Under modern marketing methods, the manufacturers by nationwide advertising create consumer demand for their products and the retailer stocks the items because of that consumer demand. To satisfy that demand, the retailer may be forced to stock several brands of the same item from which the customer makes his choice. I see no justice in requiring a retailer to respond in damages without fault for injury to a customer caused by a can of shaving cream which he himself selected from the retailer's shelves and which the retailer was carrying in stock in response to consumer demand. Once the concept of fault as a basis of tort liability is abandoned, there are no guidelines save the court's choice for determining upon whom liability will be imposed in order to provide maximum protection for those who are injured but who are unable to prove fault because none exists.

I would allow the plaintiff to proceed on the basis of warranty but not on the basis of strict liability in tort.