Ellen M. McCUE, Plaintiff-Appellee,

v.

NORWICH PHARMACAL COMPANY,
Defendant-Appellant.

No. 71–1324.

United States Court of Appeals,
First Circuit.

Jan. 20, 1972.

Stephen J. Spielman, Manchester, N. H., with whom Devine, Millimet, McDonough, Stahl & Branch, Manchester, N. H., was on brief, for appellant.

Stanley M. Brown, Manchester, N. H., with whom McLane, Carleton, Graf, Greene & Brown, Manchester, N. H., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE, Circuit Judge, and WYZANSKI, Senior District Judge.*

ALDRICH, Chief Judge.

This is a diversity action for personal injury, or illness, caused by long-term use of an ethical drug, Furadantin, manufactured by the defendant Norwich Pharmacal Company. After the jury found for the plaintiff, defendant appealed from the denial of its motion for a directed verdict (waived during oral argument) and the refusal of a requested instruction to the jury.

Our first question would have been what record is before us, the defendant

---

* Sitting by designation.

having designated relatively little and the plaintiff having initially cross-designated nothing at all. We need not, however, decide what vitality is left in our decisions such as Chernack v. Radlo, 1 Cir., 1964, 331 F.2d 170, after the counter-designation provision of F.R.A.P. 30(b), because at oral argument the parties stipulated, and the court acceded, that reference might be made to the entire record.[1]

▪ Although accepting the now voluminous record, unreproduced, the court will assume that any statement in the charge as to what the evidence showed, or warranted finding, was correct, since neither party excepted thereto, other than the defendant's single exception. The facts, although defendant claims them to be in certain respects unusual, are relatively simple. Plaintiff from time to time consulted a general practitioner, Dr. Elizabeth Wilbur. Suffering on one occasion from an apparent episode of a chronic urinary infection, and Dr. Wilbur being absent, she attempted to consult a Dr. Fardleman, a specialist. He, also, was away and plaintiff was referred to a locum tenens, Dr. Cavanagh. He gave her a prescription for Furadantin, marked as refillable only twice. Subsequently, plaintiff again consulted Dr. Wilbur. Plaintiff testified that Dr. Wilbur renewed the prescription for Furadantin open-endedly. Although Dr. Wilbur made no note of doing this, and later failed to recall it, the fact that the druggist's records indicate an open-ended prescription by Dr. Wilbur at a reduced dosage, with no contradictory evidence, seems to us to make this a case where plaintiff's testimony that Dr. Wilbur knew she was prescribing Furadantin, thus corroborated, must be accepted.

Dehydrating Process Co. v. A. O. Smith Corp., 1 Cir., 1961, 292 F.2d 653, 656 n. 6, cert. denied 368 U.S. 931, 82 S.Ct. 368, 7 L.Ed.2d 194; Boeing Co. v. Shipman, 5 Cir., 1969, 411 F.2d 365, 368–377.

The jury could find that for some time prior to the date of Dr. Wilbur's renewing the prescription defendant knew that a possible side effect of long term use of Furadantin was pulmonary fibrosis, but did not give an adequate warning of this danger to the medical profession. Nor did this information reach Dr. Wilbur in any other manner. The defendant did recommend that patients continuing to take its drug should be kept under general observation, and it could be found that Dr. Wilbur's observations were not continuous. However, this recommendation was not expressed in terms of pulmonary fibrosis. The doctor did keep check on plaintiff's urinary difficulties and found them under control. When she discovered plaintiff's incipient bronchial symptoms she did not connect them with the drug, until too late.

We will assume in defendant's favor that the evidence would compel a finding that, due to her approval of Dr. Fardleman, Dr. Wilbur entirely forgot the incident, and during the next two years was unaware that plaintiff was taking the drug on her own, using Dr. Wilbur's open-ended prescription. In this posture defendant contended that the jury could find that defendant was warranted in not anticipating unsupervised taking of its drug, and that, if it so found, defendant would not be liable even if it had failed to give adequate warnings of the drugs potentiality. It requested a charge to that effect, which the court refused.[2]

---

1. This consent was an act of grace on the part of the court, not to be regularly counted on. See Local Rule 5(c).

2. "In the absence of evidence that prescribing physicians normally do not record or recollect that they have given open-ended prescriptions for long term therapy to their patients, such conduct on the part of a physician or physicians is not to be apprehended by a defendant drug manu-

facturer. Therefore, if you find that in the instant case the conduct of Doctors Cavanagh and Wilbur relative to the initial and refill prescription was such that it would not reasonably be anticipated by the defendant, and if you further find that such conduct on their part was the sole and superseding cause of the plaintiff's injuries and damages, your verdict should be for the defendant."

Although we have found no case directly on point we believe that, having embraced strict liability, the New Hampshire court would follow others in imposing upon a drug manufacturer an affirmative duty to warn the medical profession of the dangerous side effects that might result from the long-term use of its product. *See* Buttrick v. Arthur Lessard & Sons, Inc., 1969, 110 N.H. 36, 260 A.2d 111; *cf.* Sterling Drug, Inc. v. Yarrow, 8 Cir., 1969, 408 F.2d 978, 991–993; Sterling Drug, Inc. v. Cornish, 8 Cir., 1967, 370 F.2d 82, 84–85. Even if a physician's carelessness may have taken a form not specifically anticipated, defendant should not escape liability so long as its failure to give an adequate warning may have contributed thereto. *See* Sterling Drug, Inc. v. Cornish, ante, at 85. The instructions given sufficiently stated this principle. In urging that it must have anticipated the particular conduct, defendant puts the case of a plaintiff who stole a patient's medicine and, not having had any connection with the prescribing physician, took it without a doctor's warning and supervision. That is not this case. It is by no means certain—indeed, we would think the opposite far more likely—that Dr. Wilbur would have given an open-ended prescription, or have failed to watch for and earlier recognized the possible side effects of unlimited use, if she had known what they were. If the doctor had been warned, and had nevertheless given such a prescription and forgotten about it, it is clear that defendant would not have been liable. *See* Oppenheimer v. Sterling Drug, Inc., 1964, 7 Ohio App. 2d 103, 219 N.E.2d 54; *cf.* Helene Curtis Industries, Inc. v. Pruitt, 5 Cir., 1967, 385 F.2d 841, cert. denied 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652. Correspondingly, having put a dangerous drug on the market without adequate warning defendant cannot be heard to say that the physician might have disregarded a proper one.

Affirmed.