Roger K. DUNLAP, et al.

v.

AULSON CORPORATION (now Speco), et al.

Roger K. DUNLAP, et al.

v.

SQUARE "D" COMPANY

Roger K. DUNLAP, et al.

v.

The BARKER-ROCKFORD COMPANY

Roger K. DUNLAP, et al.

v.

The RUCKER COMPANY.

Civil Nos. 78–291–D, 78–317–D, 81–233–D, 81–234–D.

United States District Court, D. New Hampshire.

July 6, 1981.

648

Paul R. Cox, Dover, N. H., for plaintiffs.

Elizabeth Cazden, Manchester, N. H., for Aulson/Speco.

Joseph F. Devan, Manchester, N. H., for Square "D".

Theodore Wadleigh, Manchester, N. H., for Barker-Rockford.

Raymond R. Ouellette, Dover, N. H., for N. L. Rucker Products/Rucker Company.

R. Peter Shapiro, Concord, N. H., for Aulson Tanning.

A. J. McDonough, Manchester, N. H., Peter F. Kearns, Exeter, N. H., for Hampton Machine.

Michael G. Gfroerer, Concord, N. H., Peter J. DeTroy, III, Portland, Me., for Prime Tanning.

## MEMORANDUM OPINION

DEVINE, Chief Judge.

The Court now has before it for resolution, following hearing, various motions filed by the respective parties in these con-

solidated cases.[1] For purposes only of disposition of said motions, the general background of the litigation follows.

## I. *Background*

Plaintiffs Roger and Mary Dunlap, husband and wife, are residents of Somersworth, New Hampshire. From 1956 onward, Roger Dunlap was employed by Prime Tanning Company, situate in Berwick, Maine. On November 11, 1976, while so employed, he was operating a Turner Hydraulic Press, so-called, when he allegedly sustained severe personal injury as the result of a malfunction of the machinery.

Initial actions were commenced in the Superior Court of Strafford County against Aulson Corporation (now Speco) and Square D Company, which actions were timely removed to this court in September of 1978. There followed considerable additional pleadings seeking (with mixed success) to add third-party defendants, and plaintiffs subsequently brought additional direct actions against additional defendants. *See* n.1, *infra.* Additionally, the Court was required to rule upon various motions, and in the course of so doing made clear that it considered that the substantive law of Maine was applicable to these proceedings. As hereinafter discussed, more recent developments have given rise to the initial motion considered, that of the plaintiffs seeking to have applied the law of New Hampshire in lieu of that of Maine.

## II. *Plaintiffs' Motion to Determine Applicable Law*

Contending that as none of the defendants are residents of either Maine or New Hampshire the plaintiffs' theories of strict liability, negligence, and breach of warranty should be decided pursuant to New Hampshire law, the plaintiffs urge (and the defendants strenuously oppose) that New Hampshire law should be applied to their right of and extent of recovery herein.

Under the rule enunciated in *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), a federal court, sitting in diversity cases, must follow the conflict of laws rules of the state in which it sits. *Roy v. Star Chopper Co., Inc.*, 584 F.2d 1124, 1128 (1st Cir. 1978), *cert. denied*, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979). The New Hampshire Supreme Court has determined that choice-of-law decisions are to be based on relevant choice-influencing considerations as set forth in *Clark v. Clark*, 107 N.H. 351, 222 A.2d 205 (1966). These considerations are (1) predictability of results; (2) maintenance of reasonable orderliness and good relationship among the states in our federal system; (3) simplification of the judicial task; (4) advancement by the court of its own state's governmental interests rather than those of other states; (5) the court's preference for what it regards as the sounder rule of law. *Id.* at 355, 222 A.2d at 208, 209. "Obviously, some of them will be more relevant to some type of cases, less to other types." *Id.* at 353, 354, 222 A.2d at 208.

As we turn our attention to these criteria, we must bear here in mind that the machinery in question was in large part manufactured and transferred to Prime Tanning Company in 1965.[2] As of such date, neither

1. The hearing hereinabove referenced was held on June 12, 1981, and in the course thereof the Court granted the motions of various of the parties to continue the trial from its then scheduled date of July 6, 1981. Under the circumstances, there is no valid basis for objection to consolidation of the newly-filed actions of Civ. No. 81–233 (*Dunlap v. Barker-Rockford Co.*) and Civ. No. 81–234 (*Dunlap v. The Rucker Company*) with the previously pending actions, and such motion is herewith granted.

2. This is true apparently as to the original hydraulic conversion press and the original electrical controls (apparently the latter were man-

ufactured by Square D between September 1957 and January 1963). There is evidence, however, that subsequent electrical controls and buttons were purchased and services were provided by at least some of the defendants to Prime Tanning until January 1970, and perhaps even to the time of the accident. Whether this would involve the questions of a "mixed contract for sale of goods" (*see Annot.* 5 A.L.R.4th 501) it is not here necessary to decide, but, as we subsequently detail, the case is not "all or none" for any of the parties with respect to the motions currently posed for decision.

New Hampshire[3] nor Maine[4] had adopted the doctrine of "strict liability". It cannot then fairly be said that any of the parties to the instant litigations "reasonably expected" that the doctrine of strict liability would have application to their actions relative to the original manufacture and sale of the machinery in question. Additionally, in 1965 the choice-of-law rule in both New Hampshire, *Gray v. Gray*, 87 N.H. 82, 174 A. 508 (1934), and Maine, *Winslow v. Tibbetts*, 131 Me. 318, 162 A. 785 (1932), was that of the *lex loci delicti, i. e.*, the right of recovery was controlled by the law of the place where the injuries were received.[5]

The first consideration, predictability of results, basically relates to consensual transactions wherein it is important that parties be able to know in advance what law will govern a transaction so that they can plan it accordingly. *Clark v. Clark, supra*, 107 N.H. at 354, 222 A.2d at 208. But here, unlike the Rhode Island manufacturer who could have purchased insurance for his protection under that state's strict liability rule in *Roy v. Star Chopper Co., Inc., supra*, 584 F.2d at 1129, with a single exception, none of the defendants were here in a position to so prognosticate.[6]

Therefore, the consideration of predictability of result does not here suggest that it is more appropriate to apply New Hampshire rather than Maine law to the circumstances which give rise to the instant litigation.

The second consideration, interstate order, is best served when application of one state's law offends no law or policy of the other state. *Turcotte v. Ford Motor Company*, 494 F.2d 173, 178 (1st Cir. 1974); *Clark v. Clark, supra* 107 N.H. at 354, 222 A.2d at 208. Here, Maine had deliberately chosen to leave to its policy-making legislature the adoption of strict liability,· preferring prior to October 3, 1973, to judge the liability of manufacturers and retailers under doctrines of negligence and warranty. Plaintiff Dunlap had for twenty years prior to his injury by choice been employed in Maine and has received workmen's compensation benefits pursuant to the statutes of that state, the cost of which to his employer presumably is based upon applicable exposure under the law of Maine. This place of employment "is not 'fortuitous' but stable and chosen". *Maguire v. Exeter & Hampton Electric Company*, 114 N.H. 589, 591, 325 A.2d 778, 779 (1974).[7] As plaintiff here

---

**3.** New Hampshire judicially adopted the doctrine of "strict liability" as outlined in Restatement of Torts, Second, § 402–A on December 30, 1969. *Buttrick v. Lessard*, 110 N.H. 36, 260 A.2d 111 (1969).

**4.** Maine chose the legislative route by setting forth in statutory form the requirements of Restatement of Torts, Second, § 402–A effective October 3, 1973. 14 M.R.S.A. § 221 (enacted by P.L. 1973, Chap. 466, § 1).

**5.** On May 27, 1970, the Maine court, citing, inter alia, *Clark v. Clark, supra*, adopted, as had New Hampshire, the rule of "most significant contacts" for choice of law. *Beaulieu v. Beaulieu*, 265 A.2d 610 (Me.1970).

**6.** The single exception is defendant Rucker Company, here designated as the successor to defendant Midwest Hydraulics, Inc. Rucker was incorporated and had its principal place of business until late 1978 in California, which jurisdiction had adopted the doctrine of strict liability in 1963. *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963). Illinois, the place of incorporation and business situs of defendants Barker-Rockford Co. and Midwest Hydraulics, Inc.,

adopted that doctrine on May 20, 1965. *Suvada v. White Motor Company*, 32 Ill.2d 612, 210 N.E.2d 182 (1965). Michigan, the place of incorporation of defendant Square D, also adopted strict liability in 1965. *Piercefield v. Remington Arms Company*, 375 Mich. 85, 133 N.W.2d 129 (1965). Massachusetts, the place of incorporation and business situs of defendants Aulson and Speco, has steadfastly refused to adopt strict liability, insisting upon proof of negligence. *Killeen v. Harmon Grain Products, Inc.* (1980), —— Mass.App. ——, 413 N.E.2d 767 (and cases therein cited).

**7.** In *Allstate Insurance Company v. Hague*, —— U.S. ——, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), the plaintiff's decedent, a Wisconsin resident, was killed on a Wisconsin highway while riding as a passenger on a motorcycle operated by a Wisconsin resident, which motorcycle was struck by an automobile also operated by a Wisconsin resident. For fifteen years immediately prior to his death, the plaintiff's decedent had been employed in Minnesota, and the Court, in upholding the application of Minnesota law to the construction of a Wisconsin-issued uninsured motorist insurance policy, indicated that such place of employment implicat-

is a beneficiary of workmen's compensation, it can hardly be said that there exists the danger of failure to provide adequate compensation such as to cause the plaintiffs herein to become burdens upon the State of New Hampshire. Accordingly, the Court finds and rules that interstate order will probably be better served by application of the substantive law of Maine.

The third consideration, simplification of the judicial task, addresses procedural rules, not here applicable under uniform Federal Rules of Civil Procedure, and the question of whether it is easier for a Court to apply its own substantive law. *Clark v. Clark, supra* 107 N.H. at 354, 222 A.2d at 208. For reasons hereinafter detailed in our discussion of the final choice of law consideration, the Court finds and rules that its judicial task would be neither more nor less simplified by application of either the law of Maine or the law of New Hampshire.

The fourth consideration, advancement of the forum's governmental interest, is not here served by application of New Hampshire's doctrine of strict liability to machinery and controls which were in large part manufactured and without the control of the dealer prior to the adoption by either Maine or New Hampshire of the doctrine of strict liability. The New Hampshire Court adopted the doctrine over the strong dissent of (our now retiring Chief) Justice Grimes as to the retailer, *Buttrick v. Lessard*, 110 N.H. 36, 41, 260 A.2d 111, 114–15 (1969), and has been extremely reluctant to extend the doctrine. *Wood v. Public Service Company*, 114 N.H. 182, 188–89, 317 A.2d 576, 579–80 (1974); *Bolduc v. Herbert Schneider Corporation*, 117 N.H. 566, 570, 374 A.2d 1187, 1190 (1977); *Brigham v. Hudson Motors, Inc.*, 118 N.H. 590, 597, 392 A.2d 130, 135 (1978). Additionally, the New Hampshire Court has recently noted some adverse economic consequences which have resulted from the adoption of the doctrine. *Thibault v. Sears, Roebuck & Company*, 118

N.H. 802, 806–07, 395 A.2d 843, 846 (1978). As the only real governmental interest herein is the fair and efficient administration of justice, *Clark v. Clark, supra*, 107 N.H. at 355, 222 A.2d at 208–09, the Court concludes that the governmental interest of neither state outweighs that of the other.

The final consideration is the Court's preference for what it regards as the sounder rule of law. *Clark v. Clark, supra*, 107 N.H. at 355, 222 A.2d at 209. In our discussion of the fourth consideration, governmental interest, we have touched in part upon this, but more importantly, returning to *Thibault v. Sears, Roebuck & Company, supra*, decided on November 30, 1978, we note that therein was coined the defensive doctrine of "plaintiff's misconduct", which practically results in cases where, as here, plaintiffs seek to move forward on alternative theories of strict liability and negligence, that as to the strict liability claims the jury be charged as to such misconduct, while as to the negligence claims they be charged in accordance with the New Hampshire comparative negligence statute, RSA 507:7–a (Supp.1979).[8] The fond hope of Justice Douglas, author of *Thibault*, that counts in both negligence and strict liability would not be submitted to the fact finder has, quite understandably, been universally ignored, at least by those who practice before the instant Court. Despite the fact that defendants in such instances are given the benefit of the probably-confusing charges on both defensive doctrines, plaintiffs would be less than human if they voluntarily dismissed a ground of recovery.

█ In sum, then, the Court finds and rules that under the circumstances of the instant cases the New Hampshire doctrine of strict liability is not necessarily the sounder rule of law, and that on balance of the choice-influencing considerations outlined in *Clark v. Clark, supra*, it should, and it herewith does, rule that the substantive

---

ed a substantial state interest. *See also Summers v. Interstate Tractor & Equipment Co.*, 466 F.2d 42, 49 (9th Cir. 1972).

8. The doctrine of comparative negligence is also applicable where, as in the instant case, the third alternative of breach of warranty is claimed. *Hagenbuch v. Snap-On Tools Corporation*, 339 F.Supp. 676 (D.N.H.1972).

law of Maine is to be applied as to those issues which govern the plaintiffs' right to and extent of recovery herein.

### III. *Square D's Motion to Cross-claim Against Prime Tanning Company*

In its Opinion and Order of May 29, 1980, the Court, applying the law of Maine, dismissed third-party actions brought by Speco against Prime Tanning and its workmen's compensation insurer, *Employers Insurance of Wausau.* Recognizing this, Square D seeks to cross claim against Prime Tanning for failure to inspect, service, and replace components of the machinery furnished by Square D insofar only as regards the complaint for loss of consortium filed in behalf of Mary L. Dunlap, wife of the injured plaintiff Roger K. Dunlap.

■ Examination of the applicable Maine law, *Sawyer v. Bailey,* 413 A.2d 165, 5 A.L.R. 4th 292 (1980), makes clear that such rights of recovery for consortium as are possessed by Mrs. Dunlap are purely derivative of and not, as in New Hampshire,[9] independent of those possessed by her husband. Accordingly, the motion of Square D to allow cross claim as against Prime Tanning Company must be (for the reasons set forth in the Court's previous Order and Opinion of May 29, 1980) and it is herewith denied.

### IV. *Plaintiffs' Motions to Amend Complaint*

■ Plaintiffs Dunlap have moved in each instance to amend their complaints against the defendants Speco, Square D, Aulson Corporation (now Speco), Barker-Rockford Company, and Rucker Company. The thrust of such amendments is to allege (in anticipation of the Court's ruling that Maine law is to be applied to plaintiffs' right to and extent of recovery) that plaintiffs were in privity with the various defendants at all times pertinent to the litiga-

tion. The objections of the defendants to these amendments, in light of the continuance of the previously-scheduled trial, must be and are herewith overruled, and the motions to amend are granted, for the liberal mandate of Rule 15(a), Fed.R.Civ.P., that leave to amend "shall be freely given when justice so requires" is to be heeded. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

### V. *The Motions Directed to Ultimate Disposition*

In this category are the motions of Aulson seeking dismissal (for various reasons), of Square D similarly seeking dismissal, of Rucker Company also seeking dismissal, and of Speco seeking judgment on the pleadings. The Court discusses under a different heading motions of defendant Barker-Rockford seeking dismissal for lack of jurisdiction and of Midwest Hydraulics seeking dismissal for lack of service and because it was dissolved at the time of commencement of litigation.

### A. *The Statute of Limitations*

■ Defendants Aulson, Speco, and Rucker Company seek dismissal of all claims of plaintiffs Roger Dunlap and Mary Dunlap on the ground that they are barred by the statute of limitations, and plaintiffs, quite properly, point out that these motions are untimely filed. Rule 8(c), Fed.R.Civ.P., includes the statute of limitations as an affirmative defense which must be pleaded in the answer, and the ordinary consequence of failure to so plead is its forced waiver and exclusion from the case. 5 Wright & Miller, Federal Practice and Procedure § 1278; *Jakobsen v. Massachusetts Port Authority,* 520 F.2d 810, 813 (1st Cir. 1975). The Court here finds and rules that it would be prejudicial at this stage of the proceedings to allow any defendant to in-

---

**9.** Created by statute, RSA 507:8–a, the right of consortium granted to both wife and husband in New Hampshire is construed to be separate and distinct from that of the injured spouse.

*Archie v. Hampton,* 112 N.H. 13, 287 A.2d 622 (1972); *LaBonte v. National Gypsum Co.,* 110 N.H. 314, 269 A.2d 634 (1970).

terpose the statute of limitations as a defense to these proceedings.[10]

### B. *Motions to Dismiss for Failure to State a Claim or Seeking Judgment on the Pleadings*

Rule 12(h) preserves from any waiver mechanism the defenses of failure to state a claim upon which relief can be granted, Rule 12(b)(6), together with defenses of lack of subject matter jurisdiction, Rule 12(b)(1), and failure to join pursuant to Rule 19, Rule 12(b)(7). 5 Wright & Miller, Federal Practice and Procedure § 1361; *McNally v. Nicholson Manufacturing Company*, 313 A.2d 913, 915, n.2 (Me.1973). Thus, as the Court here finds and rules, the motions seeking final disposition of these matters on the basis of the applicable Maine law are not untimely filed, and plaintiffs' objection to consideration of these motions is overruled. This is particularly true where, as here, plaintiffs' counsel with offices on the Maine border apparently was unaware [11] and thus failed to call the Court's attention to the recent (January 2, 1981) decisions of the Maine Supreme Court which are hereinafter discussed. These decisions, *Hurd v. Hurd*, 423 A.2d 960 (1981), and *Burke v. Hamilton Beach Division*, 424 A.2d 145 (1981), analyze the application of the Maine rules of privity to products liability actions.

In *Hurd v. Hurd, supra*, the plaintiff's father, owner of a farm, purchased a used front-end loader in early 1971. The loader had been manufactured by Clark Equipment Co. (Clark) in 1960 and had been owned by several others prior to such purchase. On November 20, 1971, while plaintiff was employed as a laborer on his father's farm, he sustained severe injuries while engaged in the operation of the loader. The trial court's dismissal of plaintiff's claims against his father [12] and Clark was upheld for lack of privity.

In *Burke v. Hamilton Beach Division, supra*, the plaintiff housewife had purchased an electric mixer at retail from Day's, Inc., on November 25, 1958. The mixer, manufactured by Hamilton Beach, performed without problem for almost twenty years. On February 4, 1978, an alleged malfunction in a safety mechanism caused plaintiff to sustain injury. The trial court's entry of judgment on the pleadings for Day's, Inc., and Hamilton Beach was again upheld for lack of privity.[13]

The reasoning behind the above decisions is that prior to 1964 in Maine claims against a manufacturer for breach of warranty and (in most instances) for negligence were barred where privity was lacking between a plaintiff and a defendant with whom the plaintiff had not contracted. Such bar was considered to be total with respect to claims for breach of warranty, *Pelletier v. Dupont*, 124 Me. 269, 128 A. 186 (1925), and subject only to narrow exceptions (for "imminently dangerous products") in claims for negli-

---

**10.** Rucker Company did raise the statute of limitations as an affirmative defense in its answer to the direct action recently brought against it by plaintiffs herein, but no such defense was previously raised in the long-pending third-party action against it, nor has such defense been raised by Midwest Hydraulics, Inc., the alleged corporation predecessor of Rucker Company. Inasmuch as Rucker is here sued by plaintiffs only as an alleged successor corporation and as to the other defendants as a third party, the Court rules that it is not at this juncture of the proceedings entitled to the defense of the statute of limitations.

**11.** Assuredly, if counsel were aware of these recent decisions, it would comply with its duty to the Court to disclose their contents, even though they might be found to be adverse to the plaintiffs' position. However, as indicated in the Court's Memorandum and Order of May 26, 1981, p. 8, n.3, the Court itself discovered these opinions in the course of its research for the material contained in said Memorandum and Order.

**12.** As a farm laborer, plaintiff was exempt from the provisions of the Maine workmen's compensation law. 423 A.2d 962, n.3.

**13.** Unlike the majority of the defendants in the instant litigation, Day's and Hamilton Beach had affirmatively pled the statute of limitations defense in their answers. The trial court accordingly dismissed all claims on this basis, but on appeal the Supreme Court, while upholding the claim against Day's on this basis, chose to rule on the privity aspects of the claim with respect to Hamilton Beach. 424 A.2d at 146.

gence. *Flaherty v. Helfont*, 123 Me. 134, 122 A.2d 180 (1923).

In 1963 (effective on December 31, 1964), the Maine Legislature enacted the Uniform Commercial Code, a pertinent section of which, 11 M.R.S.A. § 2–318, abrogated the requirement of "horizontal" privity by permitting suit against a seller of defective goods by a household or family member or a guest of the purchaser. *Hurd v. Hurd, supra*, 423 A.2d at 963; *Burke v. Hamilton Beach, supra*, 424 A.2d at 147. The law remained in this status until October 1, 1969, when section 2–318 was revised to abrogate "vertical" as well as "horizontal" privity requirements, and plaintiffs were thus permitted to reach remote sellers, suppliers, and manufacturers of defective goods. *Burke, supra*, 424 A.2d at 147; *Hurd, supra*, 423 A.2d at 963. On the same date (October 1, 1969), the Legislature also abrogated privity requirements in all suits for negligence and breach of warranty. 14 M.R.S.A. § 161; *Burke, supra*, 424 A.2d at 147; *Hurd, supra*, 423 A.2d at 963. It was not until October 3, 1973, that the statute (n.4, *infra*) enacting strict liability became effective. 14 M.R.S.A. § 221; *Burke, supra*, 424 A.2d at 147. In each of these instances of legislative enactment, the Legislature expressly declared its intention that the enactment should not be given retrospective effect. *Burke, supra*, 424 A.2d at 147–48; *Hurd, supra*, 423 A.2d at 963–64. It is, accordingly, in light of the Maine law as it existed within the time frame encompassed by the circumstances of the instant litigation that we must analyze the motions of the respective defendants seeking dismissal. In so doing we follow the familiar requirement that the material facts alleged in the complaint are to be construed in the light most favorable to plaintiffs and taken as admitted, with dismissal ordered only if plaintiffs are not entitled to relief under any set of facts they could prove. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir. 1976).

**i. *The Motions of Aulson and Speco***

In the amended complaint as against defendants Aulson and (its alleged corporate successor [14]) Speco it is alleged that in addition to the actions of such defendants in rebuilding or converting the machinery at issue in 1965, they also had serviced the machine from that time forward. Additionally, Roger Dunlap contends that as an employee of Prime Tanning Company, the purchaser of the machinery, he is in privity with Aulson and its successor, Speco, and he also advances the claim that such machinery was "imminently dangerous".[15]

As regards the claim for strict liability (Counts I and V), it is clear that inasmuch as such doctrine was not applicable in Maine prior to October 3, 1973, and was not given retrospective effect, the defendants Aulson and Speco are entitled to dismissal of any claims advanced against them for strict liability which arise from transactions or events occurring prior to October 3, 1973. However, as we have above indicated, there are ongoing claims arising from the allegations of continuing service of the machinery, and depending upon the factual evidence adduced as to transactions or events subsequent to October 3, 1973, such strict liability claims will not be dismissed and are still viable.

In *McNally v. Nicholson Manufacturing Company*, 313 A.2d 913 (Me.1973), the defendant Nicholson was the manufacturer of

---

**14.** In its Memorandum and Order of May 26, 1981, the Court found and ruled that there were sufficient genuine issues of material fact to warrant (although not necessarily require) a jury in finding that Speco was the corporate successor of Aulson.

**15.** Mary Dunlap also claims to be in privity with the defendant as a resident of the household of her husband. This claim is apparently advanced under the original version of 11 M.R.S.A. § 2–318, but, as we have previously ruled that her claim is derivative of her husband's (652 *supra*), we find it unnecessary to discuss the validity of her claim of such standing, ruling it to be unnecessary in the context of this litigation. *See, however*, Annot. 100 A.L.R.3d 743, § 7(b), pp. 767, *et seq.* (1980).

a "chipping" machine which it sold to the plaintiff's employer, J.M. Huber Corporation (Huber) in August of 1966, delivering the machine to the Huber place of business on May 4, 1967. On August 19, 1968, while the machine was being used for its intended purpose, the plaintiff sustained his injuries, and the Maine Supreme Court construed the then applicable version of 11 M.R.S.A. § 2–318 to include employees of purchasers of allegedly defective machinery. Accordingly, it held that the plaintiff McNally could proceed against Nicholson Manufacturing Company in his claims for breach of warranty.[16]

 Accordingly, the plaintiff's allegations here that as an employee of the purchaser of the machinery Roger Dunlap is in privity with defendant Aulson and its successor Speco constitutes a sufficiency of pleading to withstand the motions of said defendants relative to the claim for breach of warranty (Counts III, IV, VII, VIII). The exception to the privity requirement for claims of negligence under Maine law is limited, as we have above indicated, to "imminently dangerous" products, *Flaherty v. Helfont,* 123 Me. 134, 122 A. 180 (1923), recognizing the exception as expressed in *MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 (1916). Whether the applicability of this exception is to be decided as a question of law or to be submitted to the jury is the question here presented. *See Larue v. National Union Electric Corporation,* 571 F.2d 51, 56 (1st Cir. 1978) (applying Maine law). Defendants urge that this is a matter of law and that the Court must accordingly rule that the machinery in question is not "imminently dangerous", and therefore that the plaintiff's claims for negligence are barred. Naturally, plaintiffs take a contrary position, contending that the issue is one of fact to be determined by the jury. At this stage of the proceedings, the Court concedes that additional facts need be developed and denies the motions to dismiss the negligence counts (Counts II and VI).

The defendants misplace reliance on the language of the *Burke* Court, 424 A.2d at 150, to the effect that the household mixer of Mrs. Burke was not an "imminently dangerous" product within the exception to the bar of privity. Furthermore, the Court's refusal to include the front-end loader which injured Hurd within such exception was clearly based on a finding of the trial court "that the hazard ... was 'obvious'" to plaintiff at the time of his injury. In this context, the Court finds more relevant the decision of the First Circuit in *Larue, supra,* wherein plaintiff's expert had testified in detail as to the dangers of the machine (vacuum cleaner) which caused the minor plaintiff's injuries. In pertinent part, the Court stated

The issue of the absence of privity was raised by National Union in motions for a directed verdict and for judgment n. o. v. At both points when the motions were made, however, the court had before it ample evidence that the Eureka 842A vacuum cleaner was such an 'imminently dangerous' substance as to fit within the *MacPherson* exception to the privity requirement. The plaintiff's evidence indicated that the unguarded fan mechanism constituted an extremely serious hazard to limb, if not life, manifested in such a way as not to be apparent to the average user.... In short, both after the presentation of plaintiff's case and at the end of the trial the district court had sufficient grounds for refusing to rule as a matter of law that plaintiff had failed to prove that the Eureka vacuum cleaner came within the recognized exception to the privity requirement.

571 F.2d at 55, 56.

It may well be that in the instant litigation the plaintiffs will not be able to produce the necessary quantum of proof to permit a fact finder to determine imminent danger. But, having pled that such immi-

---

**16.** The Court, however, also held that McNally could not recover on the doctrine of "strict liability", which was not then in existence in Maine, as the Court felt it would unduly com-

plicate matters to attempt to adopt such doctrine judicially in light of the well recognized privity requirements.

nent danger existed, they are entitled pursuant to the privity exception to withstand motions for dismissal directed to their claims of negligence.

### ii. *The Motion of Defendant Square D Company*

As against defendant Square D Company the amended complaint alleges that such defendant was the designer and manufacturer of certain mushroom palm buttons and electrical controls which were installed on the machinery which allegedly caused plaintiff Roger Dunlap's injury "between 1965 and November 11, 1976". It is further alleged that Square D in its sale of these controls to Prime Tanning made certain warranties, of which Roger Dunlap is a beneficiary, and that the palm buttons and electrical controls were imminently dangerous.

As with the claims against Aulson and Speco, it is clear that such defendant is entitled to dismissal of all claims for strict liability arising out of transactions or events which occurred before October 3, 1973, but, as certain transactions and events are alleged to have taken place subsequent to that date, dismissal cannot be ordered on such count at this juncture of the proceedings. Similarly, the plaintiffs are entitled to proceed on the basis of their pleadings with their claims for breach of warranty and negligence, awaiting at least further factual developments and presentation of evidence resulting therefrom.

### iii. *The Rucker Company*

As against the defendant The Rucker Company, the amended complaint alleges that said defendant is the corporate successor to Midwest Hydraulics, Inc., who in turn was agent of Barker-Rockford Company, a manufacturer of the hydraulic conversion unit that caused the plaintiff's injuries. However, nowhere in the pleadings is there any allegation of actions taken by or in behalf of Rucker Company on or after October 3, 1973, the effective date of the doctrine of "strict liability" in Maine. Accordingly, as to defendant The Rucker Compa-

ny, all claims for strict liability (Counts I and V) as to defendant The Rucker Company must be and they are herewith dismissed. The Court finds and rules, however, that as to the claims for breach of warranty (Counts III, IV, VII, and VIII) and for negligence (Counts II and VI), the pleadings as to privity and the imminent danger of the product, together with the alleged status of defendant, are sufficient to withstand the motions for dismissal.

### VI. *The Motion to Dismiss of Midwest Hydraulics, Inc.*

■ Midwest Hydraulics, Inc. (Hydraulics), was incorporated in the state of Illinois in September of 1959, and contends that it was dissolved under the law of that state on September 27, 1968, and that pursuant to the applicable Illinois statute, § 157.94 of the Business Corporation Act, Ill.Rev.Stat. ch. 32, § 157.94, any action brought against it should have been commenced within two years after its date of dissolution, but that here the initial action of plaintiffs was not filed until August of 1978, and the third-party action by Aulson against it was not brought until January 19, 1979, or more than eleven years after its dissolution. Pointing to the applicable provisions of Rule 17(b), Fed.R.Civ.P., that "the capacity of a corporation to sue or be sued shall be determined by the law under which it was organized", Hydraulics insists that it is not now entitled to dismissal.

Substantively, this contention has merit. *See Canadian Ace Brewing v. Joseph Schlitz Brewing Company*, 629 F.2d 1183 (7th Cir. 1980). However, in opposition Aulson/Speco points out that to properly consider this motion we must review matters outside the pleadings and pursuant to Rule 12(b)(6), Fed.R.Civ.P., if we do so we treat the motion to dismiss as one for summary judgment. Under such circumstances, Speco properly argues that it is entitled to "reasonable opportunity to present all materials made pertinent to such a motion by Rule 56" and suggests that we defer

decision on the motion until completion of discovery. This point is likewise well taken. *Johnson v. RAC Corporation*, 491 F.2d 510 (4th Cir. 1974). The Court notes that in its consideration of materials for decision on the motion for summary judgment filed by third-party defendant Midwest Hydraulics Service Company (Midwest), it reviewed materials furnished it including depositions of the principals of Hydraulics who were also the incorporators of Midwest. The Court concludes at this juncture that the same factual information presented in conjunction with such motion (*see* pp. 11–14 of Memorandum and Order of May 26, 1981) are sufficient to give rise at this point to genuine issues of material fact such that it cannot conclude that Hydraulics has not, as contended by Aulson/Speco, continued its corporate existence despite the filing of any formal documents with the state of Illinois. Accordingly, the motion of Hydraulics to dismiss is herewith denied without prejudice to the right to renew same at the conclusion of all discovery herein.

## VII. *The Motion of Barker-Rockford to Dismiss*

██ Barker-Rockford's motion is based on flat statements (unsupported by affidavits or other materials) to the effect that it never did business in New Hampshire and it therefore is not within the jurisdiction of the court. The short answer to this is that the amended complaint of plaintiffs clearly sets forth sufficient facts to indicate that indeed Barker-Rockford did manufacture and design at least a portion of the machinery which caused the plaintiff's injury, and under those circumstances, on the present status of the pleadings, the Court finds and rules that Barker-Rockford's motion to dismiss for lack of jurisdiction must be and it is herewith denied.

## VIII. *The Motions for Cross Claim*

██ Defendant Rucker Company has moved to cross claim against defendants Barker-Rockford and Square D Company, while Square D has moved to cross claim against Aulson/Speco, and, in light of the fact that this case is not now to be tried until November, the Court sees no valid basis for objections pursuant to Rule 13(g), Fed.R.Civ.P., and accordingly overrules the respective objections and grants these motions for cross claim.

## IX. *Revised Discovery Order*

These cases have now been rescheduled for trial as the number one cases to commence on Monday, November 9, 1981. Accordingly, it is ordered that with reference to additional discovery and preparation:

1. All disclosure of experts and Rule 26(b)(4) reports shall be completed by September 1, 1981.

2. All discovery shall be completed by October 1, 1981.

3. All new (or renewals of) dispositive motions shall be filed with the Clerk of Court not later than October 1, 1981.

4. All pretrial materials shall be filed with the Clerk of Court not later than October 15, 1981.

5. In view of the number of parties and issues posited by the instant litigation, the Court intends to submit special questions to the jury and, accordingly, if counsel wish to submit proposed forms of such special questions, they shall file them with the Clerk of Court (as separate documents from the pretrial materials) by October 15, 1981.

SO ORDERED.