Bruce J. CHASAN, on behalf of himself
and all others similarly situated

v.

VILLAGE DISTRICT OF EASTMAN;
Franklyn W. Phillips, Individually and
as Commissioner of the Village District
of Eastman; Raymond Manning, Indi-
vidually and as Commissioner of the Vil-
lage District of Eastman; Kyle Wing,
Individually and as Commissioner of the
Village District of Eastman; Eastman
Community Association; Town of
Springfield, N.H.; John Chiarella, Indi-
vidually and as Selectman of the Town
of Springfield; Louise Jacewicz, Indi-
vidually and as Selectman of the Town
of Springfield; Arnold Putney, Individu-
ally and as Selectman of the Town of
Springfield.

Civ. No. 83–144–D.

United States District Court,
D. New Hampshire.

Sept. 28, 1983.

Laurence F. Gardner, Hanover, N.H., for plaintiff.

Thomas H. Richards, Manchester, N.H., for defendants.

## OPINION AND ORDER

DEVINE, Chief Judge.

Plaintiff files an extensive complaint and asks this Court to relieve him and others similarly situated from paying various assessments made by defendants. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343. Defendants move to dismiss, and the Court grants defendants' motion.

█ In ruling on the motion, the Court follows the well-established and familiar requirement that the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted, with dismissal to be ordered only if the plaintiff is not entitled to relief under any set of facts he could

prove. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Melo-Tone Vending, Inc. v. United States,* 666 F.2d 687, 688 (1st Cir.1982); *Harper v. Cserr,* 544 F.2d 1121, 1122 (1st Cir.1976); *Dunlap v. Aulson Corporation,* 90 F.R.D. 647, 654 (D.N.H.1981).

### Facts

The Court abridges the amended complaint. Controlled Environment Corporation ("CEC") developed Eastman, a planned community, from contiguous lands located in the Towns of Enfield, Grantham, and Springfield, New Hampshire. Amended Complaint ¶ 22. Property owners in Eastman automatically became members of the Eastman Community Association ("ECA"). ¶ 25. Plaintiff bought two lots in Eastman from CEC. ¶ 23. He built a vacation home on one of the lots in 1978–79. *Id.* In 1983 he conveyed the undeveloped lot and acquired a one-half interest in a condominium at Eastman. ¶ 23. Plaintiff acquired another lot in Eastman in 1979. ¶ 24. At the time, Eastman Water Company ("EWC"), a wholly-owned subsidiary of CEC, provided water in Eastman. ¶ 26. Owners of undeveloped lots paid an annual water availability fee of $60 to EWC as required by the covenants which created ECA. ¶ 27. Homeowners who had metered services paid $20 minimum per quarter, regardless of usage. *Id.* The New Hampshire Public Utilities Commission ("PUC") regulated EWC. *Id.*

In 1981, CEC proposed to sell to ECA the Eastman golf course and EWC. ¶ 28. The ECA Council approved the acquisition on February 15, 1981, and made the following plans. ¶ 29. ECA proposed one method to purchase the golf course and another method to purchase EWC. ECA would assess every lot, home and condominium owner $245 each to raise money for the outright acquisition of the golf course. ¶ 29(a). ECA would also form a village district pursuant to New Hampshire law in order to issue bonds for the purchase of EWC.

¶ 29(b). The new water company would charge an average of $250 per year per household, and would maintain the $60 per year per undeveloped lot water availability fee. ¶ 29(c). ECA intended to have water consumers pay the debt service on the bonds issued for the purchase of EWC. ¶ 29(e).

With the approval of the Selectmen of the Towns of Enfield, Grantham, and Springfield, the Village District of Eastman ("VDE") formed on or about March 28, 1981. ¶ 30. On or about April 1, 1981, CEC conveyed EWC to ECA. ¶ 31. ECA earlier decided to own and operate the water company from date of acquisition to date of transfer to VDE. ¶ 29(d). Administrators of ECA operated the water company, and ECA obtained interim financing from a commercial lender pending transfer of the water company to VDE. ¶ 31.

On or about July 1, 1981, the water company administrator, after consultation with the Commissioners of VDE, established new water rates effective April 1, 1981. ¶ 32. The new rates increased the minimum quarterly charge for homeowners from $20 to $25, and increased the water availability fee for lot owners from $60 to $80. ¶ 32. The PUC did not review or approve these rate changes. ¶ 32. In the fall of 1981, ECA transferred the water company to VDE, which maintained the new rates and issued bonds for financing. ¶ 33. At the first annual meeting of VDE in 1982, an *ad valorem* tax was approved to pay a portion of the debt service on bonds issued by VDE. ¶ 35.

### Complaint

Plaintiff pleads four counts: impairment of contractual rights and three claims of violations of due process and equal protection. Count I, his claim for impairment of contractual rights, alleges that the increased water availability fees paid by lot owners, the increased minimum quarterly charge for home owners, ¶ 37, and the *ad valorem* tax, ¶ 38, are contrary to the intention of the ECA Council that the bond debt service be taxed on the basis of water consumption.

Count II claims violations of equal protection and due process. Plaintiff argues that increased water availability fees, minimum quarterly water use rate, and *ad valorem* tax benefited water consumers, i.e., resident homeowners, and did not benefit nonresident homeowners and lot owners, and, therefore, amounted to a taking without justification in violation of the due process and equal protection clause of the Fourteenth Amendment, and the New Hampshire Constitution, part 1, articles 12 and 15.

Count III requires some factual elaboration. Plaintiff owns a vacation home which he built in 1978–79 in the Spring Glen area of Eastman. ¶¶ 23, 44. Spring Glen is within the Town of Springfield and comprises a small part of Eastman and Springfield. ECA decided in 1981 that it would attempt to form a village district under N.H. RSA 52:1[1] in order to issue bonds to finance the purchase of EWC. ¶ 29(b). In 1981 Spring Glen did not have ten or more legal voters. ¶¶ 23, 44. The petition for approval of the village district presented to the Selectmen of the Town of Springfield in 1981 did not contain the names of ten or more legal voters from Spring Glen, but contained names of persons who did not own property in Spring Glen and who were not eligible to vote in the general election of Springfield. ¶ 45. In 1981 the Selectmen of the Town of Springfield approved the village district and Spring Glen became part of VDE. ¶¶ 30, 44. Plaintiff argues that if the approval of the village district is valid under N.H. RSA 52:1, then the statute has been applied unconstitutionally and in violation of the New Hampshire Constitution, part 1, articles 1, 12, 15, and 28, and the due process and equal protection clauses

---

1. N.H. RSA 52:1 states, in part:

   I. Upon the petition of *10 or more legal voters,* inhabitants of any village situated in one or more towns, the selectmen of the town or towns shall fix, by suitable boundaries, a district including such parts of the town or towns as may seem convenient. . . . [Emphasis added.]

of the United States Constitution. Plaintiff argues alternatively that the aforesaid constitutional provision of N.H. RSA 52:1 is unconstitutional on its face.

Count IV alleges violations of due process and equal protection by the imposition of an *ad valorem* property tax by VDE. The Court further elaborates. The Towns of Enfield, Grantham, and Springfield independently valuate real property within their towns and tax at different percentages of assessed value. ¶ 49. The Commissioners of VDE did not valuate property but adopted the town valuations. ¶ 50. Plaintiff claims that VDE imposed an unequal and nonproportional tax when VDE adopted the valuations of the towns and failed to adjust for local factors, e.g., differing percentages of assessed value.

### Law

Plaintiff contends that defendants have impaired his contractual rights. Plaintiff argues that the action of ECA in voting and approving the acquisitions of the golf course and EWC created a contract between ECA and its members. Plaintiff claims that VDE violated Article 1, Section 10, Clause 1,[2] of the United States Constitution when VDE continued to charge water rates that had been increased by ECA and established taxes, thus avoiding its alleged contractual obligation to distribute the cost of EWC on the basis of water consumed.

■ Plaintiff argues that VDE violated the Contract Clause when VDE charged increased water rates and established taxes. Plaintiff seems to contend that N.H. RSA ch. 52 enabled VDE to avoid its alleged contractual relationship with plaintiff. Viewed in the most favorable light, plaintiff claims that ECA's February 1981 contract with its members set forth the agreed-upon method and rate of payment for acquisition of the water company, and that VDE then "impaired" the contract when it increased water rates and established taxes. The claim is inapt.

The Supreme Court in the context of the contract clause has drawn a distinction between a breach of contract and impairment of the obligation of the contract. The distinction depends on the availability of a remedy in damages in response to the state's (or its subdivision's) action. If the action of the state does not preclude a damage remedy the contract has been breached and the non-breaching party can be made whole. If this happens there has been no law impairing the obligation of the contract. *Hays v. Port of Seattle,* 251 U.S. 233, 237, 40 S.Ct. 125 [126], 64 L.Ed. 243 (1920); Hale, *supra* at 891. The example of a private agreement is illustrative. When a private party breaks a contract it has breached the contract and has become liable for damages. When it pays the damages the obligation of the contract is dissolved. A state or its subdivision also may breach a contract and when it pays damages the obligation of the contract has also been dissolved. Hale, *supra* at 638. However, if a state or its subdivision passes a law and through enforcement of it prevents another party from fulfilling its obligation under the contract because the use of the ordinance precludes a damage remedy, the non-breaching party cannot be made whole. Instead, the law has impaired the obligation of the contract. Use of law normally will preclude a recovery of damages because the law will be a defense to a suit seeking damages unless it is clear the law is not to have that effect.

*E & E Hauling, Inc. v. Forest Preserve District of DuPage County, Illinois,* 613 F.2d 675, 679 (7th Cir.1980); see *Grand River Dam Authority v. National Gypsum Company,* 352 F.2d 130, 138 (10th Cir.1965), *cert. denied,* 383 U.S. 907, 86 S.Ct. 888, 15 L.Ed.2d 663 (1966); *Delaware Valley Citizens' Council for Clear Air v. Commonwealth of Pennsylvania,* 533 F.Supp. 869, 879–80, n. 8 (E.D.Pa.1982); *Dixon v. Pennsylvania Crime Commission,* 67 F.R.D. 425, 432 (M.D.Pa.1975). It remains unseen how

---

**2.** The so-called Contract Clause, Article 1, Section 10, Clause 1, states in pertinent part: "No State shall ... pass any ... law impairing the obligation of contracts...."

N.H. RSA ch. 52 precludes plaintiff's recovery. Furthermore, even if plaintiff arguably states a claim for *breach* of contract, he must affirmatively allege that this Court has jurisdiction over his claim. *McNutt v. General Motors Acceptance Corporation of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); 1 Moore, Federal Practice § 0.60[4], p. 627 (1982). This he has failed to do. Consequently, the Court dismisses Count I.

Counts II and III raise claims of due process and equal protection violations. The umbrella of 42 U.S.C. § 1983, however, does not shelter these claims from dismissal. The Court has faced similar situations before, *e.g., Cloutier v. Town of Epping,* 547 F.Supp. 1232 (D.N.H.1982), *aff'd,* 714 F.2d 1184 (1st Cir.1983) (*"Cloutier"*); *Chiplin Enterprises, Inc. v. City of Lebanon,* 712 F.2d 1524 (1st Cir.1983) (*"Chiplin"*). In those cases, as in others, *e.g., Creative Environments, Inc. v. Estabrook,* 680 F.2d 822 (1st Cir.1981), *cert. denied,* — U.S. ——, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982), the Court has rejected plaintiffs' claims that a violation of a state statute, under color of state law, always amounts to an infringement of constitutional rights.

■ Plaintiff must make out his cause of action. There are two essential elements of a cause of action under 42 U.S.C. § 1983: (1) the conduct complained of was carried out under color of state law, and (2) this conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Chiplin,* at 1526, *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). Plaintiff must allege the deprivation of a specific constitutional right. *Chiplin, supra,* at 1527. Instead plaintiff here relies on the "amorphous due process claims of arbitrary and malicious official action". *Id.* at 1528, n. 6. Plaintiff does not allege actions that reveal the type of egregious behavior that might violate the due process clause. *Cloutier, supra,* at 1190. Plaintiff instead alleges that defendants did not follow state law. Absent allegations of a constitutional violation, how-

ever, a refusal to follow state law in local matters does not amount to a deprivation of due process where state remedies are available as they are here. *Chiplin, supra,* at 1528–1529. Furthermore, it is insufficient for plaintiff to simply give labels such as "equal protection" to his claims that local government exceeded, abused, or distorted its authority. *Id.* at 1528–29. In the absence of an allegation by plaintiff of an identifiable constitutional violation, no claim has been stated under § 1983. *Id.* Consequently, the Court dismisses Counts II and III.

■ Finally, concerning Count IV, this Court does not have jurisdiction over plaintiff's attack on *ad valorem* taxes. A federal court does not have jurisdiction to render a declaratory judgment on the constitutionality of state tax laws where state court remedies are plain, speedy, and efficient. *Fair Assessment in Real Estate Association v. McNary,* 454 U.S. 100, 103, 102 S.Ct. 177, 179, 70 L.Ed.2d 271 (1981) (*"Fair Assessment"*); *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943) (*"Great Lakes"*); *see* 28 U.S.C. § 1341.

'The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it.' ... Interference with state internal economy and administration is inseparable from assaults in the federal courts on the validity of state taxation, and necessarily attends injunctions, interlocutory or final, restraining collection of state taxes. These are considerations of moment which have persuaded federal courts of equity to deny relief to the taxpayer....

*Fair Assessment, supra,* 454 U.S. at 111, 102 S.Ct. at 183, *quoting Great Lakes, supra,* at 298, 63 S.Ct. at 1073. Any challenge to the constitutionality of the tax exemption scheme must be brought in the courts of the.

State of New Hampshire, which are empowered to hear cases arising under the federal as well as the state constitutions. *See Royer v. Adams,* 121 N.H. 1024, 437 A.2d 316 (1981). Plaintiff argues that state remedies are inadequate. He essentially alleges that hearings before the board of land and tax appeals and appeals therefrom are not adequate, plain, speedy, or efficient remedies.

■■■ A federal court generally will not interfere with state tax administration unless the state court remedy is not plain, speedy, and efficient. *Rosewell v. LaSalle National Bank,* 450 U.S. 503, 512, 101 S.Ct. 1221, 1228, 67 L.Ed.2d 464 (1981). A plain, speedy, and efficient state remedy must provide the taxpayer with a full hearing and judicial determination at which he may raise any and all constitutional objections to the tax. *Id.,* 450 U.S. at 514, 515, n. 19, 101 S.Ct. at 1229, 1230, n. 19. In New Hampshire, the taxpayer may attack the constitutionality of the tax he challenges by means of declaratory judgment brought in superior court. *McCann v. Silva,* 455 F.Supp. 540, 543 (D.N.H.1978). Further, a taxpayer is not foreclosed from raising constitutional issues before the board. While "[t]he jurisdiction of the State board of taxation is specifically limited by statute to 'matters involving questions of taxation properly brought before it,'" *Roberts v. Town of Hampton,* 115 N.H. 346, 347, 341 A.2d 266 (1975), the board's powers are broad[3] and encompass consideration of proper constitutional issues. *See, e.g., Appeal of Public Service Company of New Hampshire,* 122 N.H. 919, 451 A.2d 1321 (1982). An aggrieved taxpayer may then petition for appeal of the board's decision to the New Hampshire Supreme Court. N.H. RSA 71–B:12; 76:16–a; *see* N.H. RSA ch. 541. This procedure provides the taxpayer with a plain, speedy, and efficient remedy. *See*

*Hawaiian Telephone Company v. State Department of Labor and Industrial Labor Relations,* 691 F.2d 905 (9th Cir.1982); *Cities Service Gas Company v. Oklahoma Tax Commission,* 656 F.2d 584 (10th Cir. 1981); *see also Carrier Corporation v. Perez,* 677 F.2d 162 (1st Cir.1982) (suit barred by Tax Injunction Act language barred *a fortiori* by Butler Act).

Plaintiff also argues that "the most glaring deficiency in New Hampshire law is the unavailability of a class action mechanism". Plaintiff's Memorandum p. 26. As a matter of law, the New Hampshire Supreme Court holds that a "class action constitutes a viable procedural device in this State". *State Employees' Association of New Hampshire, Inc. v. Belknap County,* 122 N.H. 614, 623, 448 A.2d 969, 974 (1982). Plaintiff claims that *Garrett v. Bamford,* 538 F.2d 63 (3d Cir.), *cert. denied,* 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976), supports his proposition that individual appeals to the state tax board do not provide an adequate remedy for a class of aggrieved taxpayers. However,

> [t]he Third Circuit has subsequently limited the import that may be assigned to *Garrett v. Bamford* through its decision in *Robinson Protective v. City of Philadelphia,* 581 F.2d 371, 376–79 (3rd Cir. 1978). Again faced with several plaintiffs and one defendant and a challenge to a tax statute based on a common question of unconstitutionality, the court found the state remedy to be adequate. Specifically addressing the issue of multiplicity of suits, the court dismissed it as a basis for holding the statutory remedy inadequate by stating:
>
>> The constitutional core of the complaint may be effectively litigated by one company in state court for the future benefit of all [similarly situated plaintiffs]. A decision by the Tax Re-

---

**3.** N.H. RSA 71–B:5 I defines the relevant authority and duties of the board.

It shall be the duty of the board and it shall have power and authority:

To hear and determine all matters involving questions of taxation properly brought before it. Such matters may be brought be-

fore the board at the pleasure of the taxpayer or as otherwise provided by law. In determining matters before it, the board may institute its own investigation, or hold hearings, or take such other action as it shall deem necessary.

view Board or the state courts in any single proceeding or suit that [the challenged statute] is invalid will bind the city and accomplish the relief sought by the five central alarm station companies. 581 F.2d at 379.

In sum, the decision in *Robinson Protective* brings the Third Circuit in alignment with the other courts on the question of multiplicity of suits in Tax Injunction Act considerations.

*Bunte Candies, Inc. v. Cartwright,* 508 F.Supp. 229, 234 (W.D.Okl.1981).

Plaintiff has diligently sought to bring this action in federal court. The undercurrent has been that federal remedies are preferable to state remedies. The rule, however, is not one of comparative remedies: for a state remedy to be adequate under 28 U.S.C. § 1341 it need not necessarily be the best available or even equal to or better than the remedy which might be available in the federal courts. *Capitol Industries—EMI, Inc. v. Bennett,* 681 F.2d 1107, 1115 (9th Cir.1982). The available remedies in the New Hampshire system must be and are plain, adequate, and complete. *See Fair Assessment, supra,* 454 U.S. at 116–17, 102 S.Ct. at 186. Consequently, the Court dismisses Count IV.

Accordingly, defendants' motion to dismiss is granted.

SO ORDERED.