## K.W. THOMPSON TOOL COMPANY, INC.

### v.

**UNITED STATES of America; United States Environmental Protection Agency; Lee Thomas, Administrator; Michael Deland, Regional Administrator; Philip Andrew, Investigator; William Ruckelshaus, Former Administrator; Lester Sutton, Former Regional Administrator.**

Civ. No. 86–111–D.

United States District Court, D. New Hampshire.

March 24, 1987.

---

John Wall, Boston, Mass., Steven M. Gordon, Esq., Concord, N.H., for plaintiff.

Richard V. Wiebusch, U.S. Atty., Concord, N.H., Elaine Marzetta Lacy, Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION
## AND ORDER

DEVINE, Chief Judge.

This is an action brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et seq.*,[1] wherein plaintiff K.W. Thompson Tool Company, Inc. ("KWT"), brings suit against defendants United States of America, United States Environmental Protection Agency ("EPA"), and six individual former or present employees of EPA, who are sued only in their official capacities.[2] Plaintiff seeks $10,000,000 in compensatory damages for defendants' allegedly wrongful actions surrounding the prior criminal prosecution of plaintiff and three of its officers docketed in this court as Cr. Nos. 85–00008–01, 02, 03, and 04–L (indictment filed March 18, 1985). This matter is presently before the Court on defendants' Motion to Dismiss Plaintiff's Amended Complaint or in the Alternative, For Summary Judgment,[3] and Motion for Sanctions Pursuant to Rule 11, Federal Rules of Civil Procedure, and plaintiff's partial objection thereto.[4] Plaintiff objects to the United States' Motion to Dismiss and for Sanctions.

### I. United States' Motion to Dismiss

In considering a motion to dismiss, the Court follows the established requirement in ruling on such motion that "the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted, with dismissal to be ordered only if the plaintiff is not entitled to relief under any set of facts he could prove." *Chasan v. Village Dist. of Eastman*, 572 F.Supp. 578, 579 (D.N.H. 1983) (citations omitted), *aff'd without opinion*, 745 F.2d 43 (1st Cir.1984). In reviewing motions to dismiss, the Court's focus is limited to the allegations contained in the complaint itself. *Litton Industries v. Colon*, 587 F.2d 70, 74 (1st Cir.1978). The standard for granting a motion to dismiss is not the likelihood of success on the merits, but is whether plaintiff is entitled to offer evidence to support his claim *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The relevant facts as alleged by KWT in its amended complaint and the background of this litigation are as follows.

KWT is a New Hampshire corporation with its principal place of business in Rochester, New Hampshire ("the facility"). Firearms are KWT's principal product, specifically those types of weapons popular with target shooters and hunters. Metal casting and firearms manufacturing are carried out at the facility, which is on or near various unnamed ditches and streams which flow into the Cocheco River. In the course of its manufacturing, KWT apparently discharges various substances into these ditches and streams, which are regu-

1. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1346(b).

2. This action originally also stated claims under 42 U.S.C. § 1983 against the EPA employees in their individual capacities, the State of New Hampshire, two New Hampshire agencies, several state employees, and two private companies and their employees. All of these defendants have been previously dismissed (see documents # 53, 56, and 60), and plaintiff filed an amended complaint on October 14, 1986, which clarifies that this is now solely an action against the above-named defendants under the FTCA.

3. The Court finds that it can rule on defendants' motion on the former standard and accordingly will drop the alternative reference to the motion for summary judgment.

4. Plaintiff concedes that it was improper for it to name any of the defendants other than the United States in this action under the FTCA, and it consents to a dismissal of the EPA and the six individual federal defendants. Accordingly, the Court grants the motion to dismiss these defendants without further discussion and shall hereafter refer only to the remaining defendant, the United States of America. It is plaintiff's inclusion of these now-dismissed defendants in the amended complaint that is the subject of defendant's motion for sanctions. Furthermore, the Court considers all of the still-pending dispositive motions filed prior to October 14, 1986 (documents # 15, 37, and the various responses thereto) to be moot, although certain portions of the memoranda filed in support of these motions were consulted at the parties' directions. The Court is also aware that there are several pending motions in the related case, *Behre v. United States of America, et al*, Civil No. 86–547, but these will be addressed in a separate order.

lated under both state and federal environmental laws.

Beginning in 1980, plaintiff had various contacts with the New Hampshire Water Supply and Pollution Control Commission ("NHWSPCC") regarding its compliance with the environmental laws. The amended complaint details these contacts at great length, which the Court declines to repeat as they are only minimally related to the claims at issue here. Suffice it to say that KWT's interactions with the NHWSPCC, as well as notification from the EPA that KWT was illegally discharging pollutants, led plaintiff to apply for a National Pollutant Discharge Elimination System ("NPDES") permit[5] from the EPA on November 12, 1982. In February 1983, the EPA returned KWT's permit application with the request that answers to certain questions be changed, even though KWT alleges that it was guided by information supplied by EPA employees in initially answering these questions. The revised permit application was submitted on or about April 1, 1983, and plaintiff's NPDES permit was issued in preliminary form on October 28, 1983. On March 14, 1984, the EPA issued to plaintiff in final form NPDES permit # NH 0021202.

Plaintiff claims that in issuing this permit to KWT the EPA "abused the NPDES permitting system by wrongfully, negligently and recklessly relying upon specific data which they knew, or should have known, was false." Amended Complaint ¶ 28. Specifically, plaintiff alleges that the EPA used outdated, overly restrictive standards in setting KWT's permit limits for the discharge of cadmium, failed to use available flow data relating to the Cocheco River, and knowingly used erroneous cyanide data.

Despite plaintiff's alleged efforts to bring itself into compliance with all applicable environmental laws, the EPA instituted a criminal investigation of plaintiff, which culminated in the previously-mentioned prosecution in this court, Cr. Nos. 85–00008–01, 02, 03, and 04–L. Plaintiff contends that this criminal prosecution was contrary to agency policy in that plaintiff was simultaneously involved in voluntary compliance efforts, and that the prosecution was the result of improper training, supervisory lapses, a panic reaction to delays and errors of the EPA itself, and an implementation of William Ruckelhaus's supposedly well-known anti-gun views.[6]

The grand jury returned its fifty-count indictment against KWT and three of its corporate officers on March 18, 1985. The indictment charged violations of the FWPCA; the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, et seq.; the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, et seq.; and the Toxic Substances Control Act, 15 U.S.C. § 2601, et seq. Prior to trial, the criminal defendants moved to dismiss the indictments on the basis of, inter alia, selective prosecution, vagueness, overbreadth, and due process violations. These motions were all denied. In the instant action, KWT alleges that prior to a scheduled jury view in the criminal matter, an EPA employee, Philip Andrew, obstructed justice by destroying exculpatory evidence and intimidating witnesses.

On July 1, 1985, pursuant to a plea agreement, KWT pled guilty to Counts 4–18 (negligent discharge of pollutants into a water of the United States, in violation of 33 U.S.C. §§ 1311(a) and 1319(c)(1)), Count 44 (disposal of hazardous substances without a permit, in violation of 42 U.S.C.

---

5. These permits are issued by the Administrator of the EPA pursuant to 33 U.S.C. § 1342, a provision of the Federal Water Pollution Control Act ("FWPCA" or "the Act"), 33 U.S.C. § 1251, et seq., which has as its goal the elimination of the discharge of pollutants into the nation's waterways. This goal is achieved by, inter alia, regulating industrial and municipal effluent discharges through the use of the NPDES permits. The permits are designed to reflect the technological feasibility of particular methods

of reducing pollution, and the discharge of any pollutant except in compliance with an NPDES permit, unless otherwise authorized by the Act, is a violation of the FWPCA. 33 U.S.C. § 1311(a).

6. Ruckelshaus was the former Administrator of the EPA who resigned this position on November 28, 1984.

§ 9603(c)), and Count 46 (failure to notify appropriate government agency of release of specified hazardous substances without a permit, in violation of 42 U.S.C. § 9603(b)). In exchange for these guilty pleas, the United States dismissed with prejudice Counts 1, 2, 3, 19–43, 45, and 47–50 with respect to KWT, and all counts were dismissed with respect to the corporate officers. KWT was ordered to pay a total fine of $75,000 and was placed on probation for a period of one year or until the fine was paid. KWT contends that its decision to plead guilty to the above-detailed counts was a "business judgment" made to avoid loss of its federal license to manufacture firearms and to avoid further expense and loss of employee time and effort. KWT does not concede that it was, in fact, guilty of these or any of the charges on which it was indicted.

After resolution of the criminal matters, KWT brought the instant suit against the United States and various other persons and entities involved in the criminal prosecution. As this action presently stands,[7] plaintiff in its twelve-count amended complaint challenges the EPA's institutional and technological incompetence which led to the issuance of KWT's NPDES permit and the decision to prosecute, as well as defendant's actions, through its agents, which plaintiff characterizes as destroying exculpatory evidence and intimidating witnesses.

Defendant has moved to dismiss plaintiff's amended complaint on the basis that the Court lacks subject matter jurisdiction over this matter. Rule 12(b)(1), Fed.R. Civ.P. Specifically, defendant contends that all of plaintiff's claims come within the "discretionary function exception" to the United States' waiver of sovereign immunity under the FTCA, 28 U.S.C. § 2680(a), and defendant further argues that those counts of the amended complaint which challenge the EPA's actions surrounding the issuance of the NPDES permit may only be reviewed in the appropriate circuit court of appeals pursuant to 33 U.S.C. § 1369(b)(1). For the following reasons,

the Court agrees with defendant that it does not have subject matter jurisdiction over this matter.

### A. The FTCA and the Discretionary Function Exception

Enacted as a waiver of the federal government's immunity for torts committed by its employees under certain circumstances, the FTCA provides that the United States shall be liable

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government ... under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). As the Supreme Court recently noted, the FTCA "did not waive the sovereign immunity of the United States in all respects ...; Congress was careful to except from the Act's broad waiver of immunity several important classes of tort claims." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 2761, 81 L.Ed.2d 660 (1984) [hereinafter *"Varig"*]. One such exception, 28 U.S.C. § 2680(a), provides in relevant part that the FTCA does not embrace "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, *whether or not the discretion involved be abused.*" (Emphasis added.)

This discretionary function exception to the FTCA has been aptly described as leading to a "quagmire" of litigation. *Baird v. United States*, 653 F.2d 437, 440 (10th Cir. 1981). However, the Supreme Court in its unanimous decision in *Varig* "signaled that a more uniform and linear approach was to be utilized henceforth." *Shuman v. United States*, 765 F.2d 283, 289 (1st Cir.1985). In *Varig*, the Court isolated two factors

---

7. *See supra* notes 2 and 3.

useful in determining under what circumstances § 2680(a) shields the United States from liability.

First, it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case. As the Court noted in *Dalehite* [v. *United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953)], the exception covers '[n]ot only agencies of the government ... but all employees exercising discretion.' 346 U.S. at 33. Thus, the basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability.

Second, *whatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals.* ... [The congressional] emphasis upon protection for regulatory activities suggests an underlying basis for the inclusion of an exception for discretionary functions in the [FTCA]: Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.

*Id.* 467 U.S. at 813–14, 104 S.Ct. at 2764 (emphasis added).

In *Varig*, the plaintiffs brought actions against the United States under the FTCA claiming that the Federal Aviation Administration ("FAA") had negligently certified commercial aircraft, resulting in in-flight fires which caused injuries to plaintiffs and their decedents. The Supreme Court analyzed the FAA's regulatory scheme and concluded that when an agency determines the extent to which it will supervise the safety procedures of private individuals, it "is exercising discretionary regulatory authority of the most basic kind." *Id.* 467 U.S. at 819–20, 104 S.Ct. at 2767. The Court also noted that FAA employees conducting compliance reviews "were specifi-

cally empowered to make policy judgments regarding the degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize compliance with FAA regulations, and the efficient allocation of agency resources." *Id.* at 820, 104 S.Ct. at 2767.

Courts grappling with the issue of the application of § 2680(a) since *Varig* have heeded its teachings. In *Shuman v. United States, supra,* the administrator of the estate of a deceased shipyard worker brought an FTCA action alleging that the worker had died as a result of his exposure to asbestos at various shipyards because of the United States' negligent failure to warn the deceased of the dangers of working with asbestos. In reversing the district court, the First Circuit found that adjudicating this claim would require just the type of judicial " 'second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort' " which Congress wished to prevent by enacting § 2680(a). *Id.* at 294 (quoting *Varig* 467 U.S. at 814, 104 S.Ct. at 2764). Thus, the court held that whether and at what time the United States should have undertaken the duty to warn about hazards of working with asbestos was a matter of administrative discretion, and the Government was thus protected from liability under the discretionary function exception.

Similarly, in *General Public Utilities Corp. v. United States,* 745 F.2d 239 (3d Cir.1984), which the First Circuit cited with approval in *Shuman,* the court held that an FTCA action by the owners of the Three Mile Island Nuclear Plant against the United States for the Nuclear Regulatory Commission's alleged failure to discover and warn of safety hazards and for the negligent approval of Three Mile Island's design was barred by the discretionary function exception. The court found that § 2680(a) leaves the means of accomplishing safety to the responsible agency, which must make judgments as to priorities and funding under the circumstances. " 'Decision making as to investigation and enforcement, particularly when there are different

types of enforcement action available, are discretionary judgments.'" *Id.* at 245 (quoting *Bernitsky v. United States*, 620 F.2d 948, 955 (3d Cir.1980)).

■ It is important to remember that whether the governmental agency acted negligently or abused its discretion has no relevance to this analysis. *Chamberlin v. Isen*, 779 F.2d 522, 525 (9th Cir.1985); *Cisco v. United States*, 768 F.2d 788, 789 (7th Cir.1985); *Shuman v. United States, supra,* 765 F.2d at 294; *General Public Utilities Corp. v. United States, supra,* 745 F.2d at 243. In fact, given the procedural posture of this case, the Court must assume that, as plaintiff alleges, defendant did not exercise due care and, as a result, plaintiff was harmed. "Congress intended to protect the government from tort suits based on negligence that was the result of the exercise of governmental discretion, despite the magnitude of the injuries that flow therefrom." *Shuman v. United States, supra,* 765 F.2d at 295. Accordingly, the Court is only concerned with whether the challenged conduct comes within the exception.

The Court thus turns to an examination of exactly what conduct on the part of the Government it is that plaintiff is challenging. Defendant asserts that plaintiff is complaining of two things: the EPA's issuance of the NPDES permit and the United States' prosecution of KWT. Plaintiff vehemently disagrees with defendant's characterization of the contents of the amended complaint. Plaintiff claims that while part of the complaint challenges the EPA's institutional incompetence which led to the permitting and prosecutorial decisions, the core of the tort claims is the EPA's "direct violation of its explicit Congressional, judicial, and internal mandates to act as an expert agency by utilizing proper scientific methodology." Plaintiff's

Supplemental Memorandum in Opposition to Defendant's Motion to Dismiss at 2.

The Court summarizes the claims in the amended complaint as follows. In Counts IV, V, VI, and VII, plaintiff challenges the technical and/or scientific errors the EPA made in issuing and setting the discharge standards for plaintiff's NPDES permit. Count II disputes the EPA's decision to institute a criminal investigation and prosecution of plaintiff, as it was allegedly contrary to the EPA's policies given that plaintiff was making voluntary efforts at compliance. Count III complains of the actions of EPA employee Philip Andrew during the criminal prosecution, which plaintiff characterizes as obstruction of justice. The remaining counts—I, VII, IX, X, XI, and XII—challenge the breach of the duty to train and supervise subordinates and follow agency procedures on the part of the EPA and five individual supervisory employees.

As to these latter counts, it is clear that they must be judged in relation to the underlying events of which plaintiff complains; i.e., the only supervisory incompetence at issue is that which allegedly led to the actions challenged in Counts II through VII,[8] and if the Court determines that plaintiff may not proceed with these substantive claims, then the failure of certain individuals to properly train and supervise their subordinates so as to allow the disputed conduct to occur would not independently state a claim. Thus, the "supervisory" counts will not be addressed separately.

■ Furthermore, the Court is satisfied that Count III must be dismissed without an analysis of the application of the discretionary function exception, as it fails to clear the initial hurdle presented by 28 U.S.C. § 1346(b). As was previously described, this section provides the jurisdictional basis for claims against the Government "where the United States, if a private

---

8. The only one of these "supervisory" counts which arguably states a separate claim is Count X, which alleges that William Ruckelshaus, in addition to his supervisory failures, allowed his anti-gun views to influence the EPA's decision to criminally prosecute plaintiff. However, plaintiff previously moved to dismiss the criminal

indictments on the basis of "selective prosecution", which motion was denied by the trial court, *see* Order in Cr. No. 85–00008–01–04–L on May 21, 1985, and this Court will not entertain a relitigation of this previously-decided issue. *See Montana v. United States*, 440 U.S. 147, 153–55, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Count III alleges that EPA employee Philip Andrew obstructed justice by destroying exculpatory evidence and intimidating witnesses in the course of the prior criminal proceeding. While, if proven, this undoubtedly constitutes criminal conduct, *see* New Hampshire Revised Statutes Annotated chapter 641:5, 6, the Court can find no authority to support the proposition that New Hampshire recognizes a civil cause of action by a private individual who is allegedly harmed by such criminal conduct. And this Court has previously held that New Hampshire does not permit a tort action to be maintained in the analogous situations of injury allegedly stemming from either the withholding or the concealment of documentary evidence or the perjury of another or by the procurement of a third person to commit perjury. *Baker v. Cestari,* 569 F.Supp. 842, 845 (D.N.H.1983). Accordingly, the Court finds that Count III must be dismissed as it does not state a claim for which a private person would be liable in a civil action under New Hampshire law.

The Court has thus narrowed the challenged actions in plaintiff's amended complaint which must be analyzed in light of the discretionary function exception to the following: (1) Count II—the claim that defendant violated its own policies when it pursued criminal prosecution of plaintiff, and (2) Counts IV through VII, which challenge the scientific errors the EPA made in issuing plaintiff's NPDES permit and setting the effluent discharge standards contained therein. These claims will be addressed *seriatim.*

■ Plaintiff's claim that defendant violated its "ministerial" duty by instituting criminal proceedings against plaintiff contrary to defendant's own policies clearly comes within the discretionary function exception. The seminal case in this area is *Gray v. Bell,* 712 F.2d 490 (D.C.Cir.1983), in which the former acting director of the FBI brought suit against the United States seeking damages arising out of a federal grand jury investigation which resulted in his indictment for conspiracy to violate the civil rights of certain citizens. In ruling that his FTCA claim was barred by § 2680(a), that court said:

> Prosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception.

*Id.* at 513 (citations omitted).

■ While plaintiff vehemently argues that it is not challenging the EPA's *decision* to prosecute, but rather the fact that the decision was made contrary to agency policy, this distinction is not relevant to the discretionary function exception analysis. "[M]aking a discretionary decision without following mandated procedures should be characterized, for the purposes of the FTCA, as an abuse of discretion ... [and thus] the discretionary function exception applies." *Jayvee Brand, Inc. v. United States,* 721 F.2d 385, 390 (D.C.Cir.1983); *accord Chamberlin v. Isen, supra,* 779 F.2d at 525. Under the FWPCA, the Administrator of the EPA has the option, when made aware of a violation of the Act, of proceeding against the offender either civilly or criminally, and the former need not precede the latter. *United States v. Frezzo Bros., Inc.,* 461 F.Supp. 266, 268 (E.D.Pa.1978), *aff'd,* 602 F.2d 1123, 1126 (3d Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *United States v. Phelps Dodge Corp.,* 391 F.Supp. 1181 (D.Ariz.1975). Thus, since the EPA had the option to proceed either civilly or criminally, the decision to pursue the criminal prosecution against plaintiff, even if done in contravention of the EPA's own policies, is, at worst, the abuse of a discretionary function, and plaintiff may not proceed with this claim under the FTCA.

■ Similarly, the Court finds that the claims plaintiff brings in Counts IV through VII are barred by the discretionary function exception because they challenge actions of the nature and quality that

Congress intended to shield from tort liability. Plaintiff claims that the EPA failed to use proper scientific methodology in the permitting process and that this cannot be viewed as the discharge of a discretionary function since Congress mandated that the EPA act as an *expert* agency in this area. The Court agrees that Congress intended the EPA to supervise the field of national environmental regulation. As the Supreme Court recently stated:

> Congress has not left the formulation of appropriate federal standards to the courts through application of often vague and indeterminate nuisance concepts and maxims of equity jurisprudence but rather has occupied the field through the establishment of a comprehensive regulatory program supervised by an expert administrative agency.

*Milwaukee v. Illinois*, 451 U.S. 304, 317, 101 S.Ct. 1784, 1792, 68 L.Ed.2d 114 (1981).

However, rather than supporting plaintiff's position, the fact that Congress entrusted the formulation of national environmental standards to the EPA instead of to the courts confirms that the setting of these standards comes within the discretionary function exception. As the court explained in *Varig*, in enacting § 2680(a), "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* 467 U.S. at 814, 104 S.Ct. at 2764. The relevant environmental statutes clearly support the finding that Congress left the setting of environmental standards and the issuance of the NPDES permits to the discretion of the EPA and that these decisions are grounded in social, economic, and political policy. *See, e.g.,* 33 U.S.C. § 1252(a) (in developing a comprehensive program for water pollution control the Administrator shall give due regard to conserving water for "the protection and propagation of fish and aquatic life and wildlife, recreational purposes, and the withdrawal of such waters for public water supply, agricultural, industrial, and other purposes"); 33 U.S.C. § 1316(a)(1) (defining the term "standard of performance" as a standard for the control of the discharge of pollutants "which reflects the greatest degree of effluent reduction which the Administrator determines to be achievable through application of the best available demonstrated control technology, processes, operating methods, or other alternatives"); 33 U.S.C. § 1317(a)(2) (certain toxic pollutants "shall be subject to effluent limitations resulting from the application of the best available technology economically achievable"); and 33 U.S.C. § 1317(a)(4) ("[a]ny effluent standard promulgated under this section shall be at that level which the Administrator determines provides an ample margin of safety").

Based on the above, the Court concludes that the actions plaintiff challenges in Counts IV through VII come within the discretionary function exception; thus, the Court is without jurisdiction to consider these claims.[9] Again, it is irrelevant to this analysis whether the EPA acted improperly and abused the discretion with which it is entrusted, as Congress has determined that the United States' sovereign immunity has not been waived under these circumstances. 28 U.S.C. § 2680(a).

To summarize this section, the Court finds that defendant's motion to dismiss plaintiff's amended complaint must be granted.

## II. Motion for Sanctions

Defendant has moved for sanctions pursuant to Rule 11, Fed.R.Civ.P., which states in pertinent part that:

> The signature of an attorney ... constitutes a certificate by him that he has read the pleading ...; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or rever-

---

**9.** Because the Court finds that the discretionary function exception bars this action, it does not reach defendant's persuasive alternative argument that since Counts IV through VII challenge the contents of KWT's NPDES permit, defendant's actions in this regard may only be reviewed in the circuit court of appeals pursuant to 33 U.S.C. § 1369(b)(1).

sal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. ... If a pleading ... is signed in violation of this rule, the court ... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading ..., including a reasonable attorney's fee.

Defendant's motion is based on plaintiff's inclusion of the EPA and the six former and/or present EPA employees as defendants in its amended complaint. As was previously described, *see supra* note 2, plaintiff concedes that it was improper for it to include these defendants in the amended complaint, as the law is well established that the United States is the only proper defendant in an FTCA action. *See* 28 U.S.C. § 2679(a); *Benitez v. Presbiterian Hospital,* 539 F.Supp. 470, 472 (D.P.R. 1982). Plaintiff thus had no objection to defendant's motion to dismiss all of the defendants other than the United States.

The issue before the Court is whether the inclusion of the improper defendants in the amended complaint warrants the imposition of Rule 11 sanctions. Plaintiff argues that it does not, because this was an honest mistake resulting from confusion upon splitting claims against the federal defendants between state and federal court and that Rule 11 sanctions may not be imposed absent a finding of subjective bad faith. Plaintiff cites two 1984 cases from the Seventh Circuit, *Suslick v. Rothschild,* 741 F.2d 1000, and *Gieringer v. Silverman,* 731 F.2d 1272, and one from the First Circuit, *Rivera-Morales v. Benitez,* 541 F.2d 882 (1976), as support for the proposition that bad faith must be shown prior to the imposition of Rule 11 sanctions. Unfortunately, plaintiff ignores the fact that Rule 11 was amended in 1983 to remove the reference to willfulness as a prerequisite to disciplinary action, *see* advisory committee's notes to Rule 11, and all of the cases plaintiff cites were decided under the old version of the rule. While the First Circuit has yet to decide this issue, every other circuit that has considered the ramifications of the 1983 amendment, including the Seventh Circuit, has ruled that an objective standard of reasonableness under the circumstances is now utilized in determining when Rule 11 sanctions should be assessed. *E.g., Donaldson v. Clark,* 786 F.2d 1570, 1576 (11th Cir.1986); *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986); *Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194, 205 (7th Cir.1985); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985).

This Court believes that the above-stated standard is the correct interpretation of Rule 11 as amended. Given that plaintiff was on notice of the defendant's position on the impropriety of including other defendants on the FTCA claim six months prior to filing the amended complaint, *see* Defendant's Motion to Dismiss or in the Alternative for Summary Judgment (document # 15) at 1–2, and the clear state of the law on this issue, the Court finds that it was unreasonable for plaintiff to include the improper defendants in its amended complaint. The relative insignificance of this error in view of the overall complexity of this case and the fact that little time and effort were required on the part of defendant to respond to it do not change this conclusion. Accordingly, defendant's motion for sanctions is granted; the attorneys who signed the amended complaint shall pay to defendant its reasonable expenses incurred in moving to dismiss the improperly included defendants and moving for sanctions.

*Conclusion*

To summarize, the Court grants defendant's motion to dismiss and for sanctions (document # 57); the previously-filed dispositive motions (documents # 15 and # 37) are moot.

SO ORDERED.