Joseph BEHRE; Emmett Ronayne; Robert Gustafson; K.W. Thompson Tool Company, Inc.

v.

Lee THOMAS, Administrator; Michael Deland, Regional Administrator; Philip Andrew, Investigator; William Ruckelshaus, Former Administrator; Lester Sutton, Former Regional Administrator; Alvin Alm, Former Deputy Administrator [all of United States Environmental Protection Agency].

Civ. No. 86–547–D.

United States District Court,
D. New Hampshire.

July 17, 1987.

Cullen & Wall by John Wall, Boston, Mass., Shaheen, Cappiello, Stein & Gordon by Steven Gordon, Concord, N.H., for plaintiffs.

United States of America by Gordon W. Daiger, Sandra R. Ganus, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for the United States et al.

Posternak, Blankstein & Lund by David J. Hatem, Boston, Mass., Dufresne-Henry, Inc. by Richard K. Allen, Manchester, N.H., for Dufresne-Henry, Inc. and Rushbrook.

Upton, Sanders & Smith by John F. Teague, Concord, N.H., for Eastern Analytical, Inc. and Brunkhorst.

State Attorney General's Office by Robert P. Cheney, Jr., Michael J. Walls, Geoffrey M. Huntington, Concord, N.H., for State of New Hampshire et al.

## OPINION AND ORDER

DEVINE, Chief Judge.

In this action, plaintiffs Joseph Behre, Emmett Ronayne, Robert Gustafson, and K.W. Thompson Tool Company, Inc. ("KWT"), bring suit against six above-named present and/or former employees of the United States Environmental Protection Agency ("EPA") in their individual capacities seeking compensatory and punitive damages for defendants' alleged deprivation of plaintiffs' constitutional rights in violation of 42 U.S.C. §§ 1983 and 1985 and the United States Constitution.[1] This action originated in Strafford County (New Hampshire) Superior Court and was removed here by defendants pursuant to 28

---

1. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.

U.S.C. § 1442(a)(1).[2] This matter is presently before the Court on defendants' motion to dismiss and plaintiffs' objection thereto.[3]

▮ In considering a motion to dismiss, the Court follows the established requirement in ruling on such motion that "the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted, with dismissal to be ordered only if the plaintiff is not entitled to relief under any set of facts he could prove." *Chasan v. Village Dist. of Eastman,* 572 F.Supp. 578, 579 (D.N.H.1983) (citations omitted), *aff'd without opinion,* 745 F.2d 43 (1st Cir.1984). In reviewing motions to dismiss, the Court's focus is limited to the allegations contained in the complaint itself. *Litton Indus. v. Colon,* 587 F.2d 70, 74 (1st Cir.1978). The standard for granting a motion to dismiss is not the likelihood of success on the merits, but is whether plaintiff is entitled to offer evidence to support his claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The relevant facts as alleged by plaintiffs in their amended complaint and the background of this litigation are as follows.[4]

KWT is a New Hampshire corporation with its principal place of business in Rochester New Hampshire. Firearms are KWT's principal product, specifically those types of weapons popular with target shooters and hunters. Metal casting and firearms manufacturing are carried out at the facility, which is on or near various unnamed ditches and streams which flow into the Cocheco River. In the course of its manufacturing, KWT apparently discharges various substances into these ditches and streams, which are regulated under both state and federal environmental laws.

Plaintiffs [5] were the subjects of a criminal prosecution for violations of various federal environmental laws docketed in this court as Cr. Nos. 85–00008–01, –02, –03, and 04–L (indictment filed March 18, 1985). On July 1, 1985, pursuant to a plea agreement, KWT pled guilty to certain counts in exchange for the dismissal with prejudice of the remaining counts against KWT and all of the counts with respect to the corporate officers. KWT then filed an action in this court against all of the same defendants originally named herein based on their allegedly wrongful actions surrounding the criminal prosecution, docketed as Civ. No. 86–111–D (complaint filed March 10, 1986). However, all of the claims against the nonfederal defendants were voluntarily dismissed from Civ. No. 86–111–D, and that case proceeded solely as a claim against the federal defendants pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et seq.* By Order dated March 24, 1987, the Court granted the defendants' motion to dismiss, and Civ. No. 86–111–D was closed. *See K.W. Thompson Tool Co., supra,* 656 F.Supp. 1077. However, in the meantime, KWT and its three officers had filed the instant action in Strafford County Superior Court on December 5, 1986, and it was removed to this court on December 31, 1986.

**2.** This action also originally stated claims against the United States, EPA, the present individual federal defendants in their representative capacities, the State of New Hampshire, two New Hampshire agencies, four state employees, and two private companies and their employees. However, the claims against these defendants were either dismissed or remanded to the state court pursuant to this Court's Order of May 1, 1987. *See Behre v. United States,* 659 F.Supp. 747 (D.N.H.1987).

**3.** Plaintiffs' memorandum in opposition to defendants' motion to dismiss incorporates by reference a previously-filed memorandum dated March 25, 1987. The March 25th memo, in turn, incorporates by reference a memorandum filed on July 15, 1986, in a since-closed companion case, *K.W. Thompson v. United States,* Civ. No. 86-111-D. The Court did not consult this latter memorandum in considering the instant motion. *See Behre v. United States, supra* note 3, 659 F.Supp. at 751.

**4.** A more complete description of the basis of plaintiffs' claims is contained in this Court's Order of March 24, 1987, dismissing Civ. No. 86–111–D. *See K.W. Thompson Tool Co. v. United States,* 656 F.Supp. 1077, 1079–81 (D.N.H. 1987). The Court only repeats those portions of the background of this litigation which are relevant to resolution of the instant motion.

**5.** The three individual plaintiffs are employees and officers of the corporate plaintiff KWT.

In their 25–count amended complaint [hereinafter "complaint"], plaintiffs detail the five-year history of their contacts with EPA and the New Hampshire Water Supply and Pollution Control Commission ("NHWSPCC") which preceded the criminal prosecution. As summed up by plaintiffs in the first paragraph of their complaint,

> This is an action for damages and deprivation of civil rights against United States and New Hampshire employees and agents for, among other things, providing false and misleading data, abusing the National Pollutant Discharge Elimination System [NPDES] permit process, threatening the right to bear arms, impairing freedom of expression, abuse of process, selective prosecution, and unreasonable search and seizure by investigative and/or law enforcement officers, obstruction of justice, and destruction of evidence; all based upon the willful, wanton, reckless and negligent supervision, training, and performance of United States and New Hampshire employees and agents.

The amended complaint was filed before the other defendants in this matter were either dismissed or remanded to state court, and many of the 25 counts contained therein do not involve the actions of the remaining individual federal defendants. In fact, only three counts in the complaint allege causes of action against the remaining defendants. They are: Count I, which alleges that the defendants violated plaintiffs' First, Second, Fourth, and Fifth Amendment rights as guaranteed by the United States Constitution;[6] Count II, which alleges deprivation of the same constitutional rights by actions under color of state law in violation of 42 U.S.C. § 1983; and Count III, which claims a conspiracy among the defendants to deprive plaintiffs of their constitutional rights in violation of 42 U.S.C. § 1985, motivated by a bias against plaintiffs because KWT manufactures guns. Defendants have moved to dismiss all of the claims against them, rais-

ing numerous arguments in support thereof. Discussing only those issues necessary for the resolution of this motion, the Court will address the remaining counts *seriatim.*

### 1. *42 U.S.C. § 1983 (Count II)*

█ In Count II, plaintiffs allege that the six defendants, acting under color of the laws of the State of New Hampshire, violated plaintiffs' rights to bear arms; their rights to freedom of expression and association; their protections against selective and malicious prosecution and abuse of process; their rights to receive procedural and substantive due process, equal protection, and a fair trial, including protection against obstruction of justice and destruction of evidence; and their rights against unreasonable searches and seizures. Regardless of the sufficiency of the allegations of these various constitutional deprivations, the Court finds that plaintiffs may not recover under section 1983 from these defendants. Title 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,* subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

(Emphasis added.) It is well established that the above-quoted language requiring action under color of state law to establish a section 1983 claim means that actions of federal officers are at least facially exempt from its proscriptions. *District of Columbia v. Carter,* 409 U.S. 418, 424–25, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). *See also American Science & Eng'g, Inc. v. Califano,* 571 F.2d 58, 63 n. 8 (1st Cir.1978) (relief

---

**6.** This is a so-called "Bivens" claim, so named for the case *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), wherein

the Supreme Court authorized damage actions against individual federal officials for infringement of constitutional rights.

under § 1983 "is available only against state actors, not against agents of the federal government"). There are certain limited circumstances wherein federal officers may be subject to section 1983 liability for actions done under color of state law.

A plaintiff may establish liability by showing that the deprivation of his rights was directly occasioned by acts of federal officials, or he may show that federal officials participated in a conspiracy to deprive him of a constitutional right and that he was in fact so deprived. ... in either case, however, plaintiff must show that the federal officials acted or conspired to act *under color of state law;* it is not enough that they simply acted in concert with state officials to deprive plaintiff of a constitutional right.

*Krohn v. United States,* 578 F.Supp. 1441, 1447–48 (D.Mass.1983), *rev'd in part on other grounds,* 742 F.2d 24 (1st Cir.1984) (emphasis in original; citations omitted).

■ In the instant case, there are no factual assertions by plaintiffs to support their bald statement that defendants were acting under color of the laws of New Hampshire. Defendants are never asserted to be other than employees and agents of the United States. The complaint falls far short of alleging the type of activity which would permit maintenance of a section 1983 action against these federal officials. *Cf. Krohn v. United States, supra,* 578 F.Supp. at 1448 (allegations that federal officials, acting without probable cause, induced state officials to seek a warrant which prolonged plaintiff's incarceration sufficient to state claim under § 1983). Plaintiffs' allegations more closely resemble those in *Peck v. United States,* 470 F.Supp. 1003 (S.D.N.Y.1979), wherein the following language by the court in ruling on a motion to dismiss is equally applicable to the instant matter.

[Plaintiff is] bound to do more than merely state vague and conclusionary al-legations respecting the existence of a conspiracy. It was incumbent upon him to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy.... Inasmuch as plaintiff has failed to sufficiently allege a joint conspiracy so as to state a cause of action against the individual federal defendants under 42 U.S.C. § 1983, that claim is dismissed.

*Id.* at 1008 (citations omitted). Accordingly, the Court finds that defendants' motion to dismiss Count II must be granted.

### 2. 42 U.S.C. § 1985 (Count III)

■ Plaintiffs' claims under section 1985 must similarly fail for lack of specific allegations supporting the purported conspiracy. Section 1985 is entitled "Conspiracy to interfere with civil rights", and all three subsections require that two or more persons *conspire* to perform certain actions in order to state a claim thereunder. This requirement has been uniformly held to necessitate the same type of specificity of allegations as is required to allege a conspiracy under section 1983. *See, e.g., Slotnick v. Garfinkle,* 632 F.2d 163, 165–66 (1st Cir.1980); *Henzel v. Gerstein,* 608 F.2d 654, 659 (5th Cir.1979); *Francis-Sobel v. University of Maine,* 597 F.2d 15, 17 (1st Cir.), *cert. denied,* 444 U.S. 949, 100 S.Ct. 421, 62 L.Ed.2d 319 (1979). "[A]llegations of conspiracy must ... be supported by material facts, not merely conclusory statements." *Slotnick v. Garfinkle, supra,* 632 F.2d at 165. There being no such material facts alleged in the complaint to support plaintiffs' assertion that defendants conspired with each other to deprive plaintiffs of their constitutional rights, the § 1985 claim must also be dismissed.[7]

### 3. Bivens Claim (Count I)

■ In this count, plaintiffs allege that defendants, acting under color of laws of

---

**7.** The Court also notes that it would be disinclined to accept plaintiffs' claim that bias against plaintiffs based on the fact that KWT manufactures guns is the type of invidious class-based animus which the Supreme Court has held is necessary to support a claim under § 1985(3). *See Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1970).

the United States, violated plaintiffs': Second Amendment right to bear arms; First Amendment rights to freedom of expression and association; Fourth Amendment protections against unreasonable searches and seizures; and Fifth Amendment rights to equal protection and due process, including protections against obstruction of justice, destruction of evidence, and selective and malicious prosecution, and their fair trial guarantees. As was previously described, *see supra* note 6, a person who alleges an injury caused by the deprivation of a constitutional right by an individual federal official states a cognizable claim. However, a federal official cannot be held liable for damages in a *Bivens* action merely because he holds a supervisory position or was somehow vaguely connected with the actions at issue. "Plaintiff cannot maintain a *Bivens*-type action against federal officials on the basis of the doctrine of respondeat superior.... As in cases under 42 U.S.C. § 1983, to recover damages plaintiff must establish defendant's personal responsibility for the claimed deprivation." *Lojuk v. Quandt,* 706 F.2d 1456, 1468 (7th Cir.1983). Borrowing from the case law which has developed in the parallel situation of an individual officer sought to be held liable under section 1983, it is clear that "supervisory officials may be found liable only on the basis of their own acts or omissions." *Miranda v. Munoz,* 770 F.2d 255, 260 (1st Cir.1985). While personal participatis not the only predicate for liability, "the plaintiff must show some causal connection between an act of the official and the alleged violation." *Henzel v. Gerstein, supra,* 608 F.2d at 658.

■ Plaintiffs fail to establish any causal connection between the five supervisory defendants and the alleged constitutional deprivations. Defendants Deland, Thomas, and Sutton are nowhere mentioned in the complaint except the listing of their official titles in paragraph 9. Personal liability clearly cannot be established in the complete absence of any substantive allegations regarding these three defendants.

*See Pearl v. Dobbs,* 649 F.2d 608, 609 (8th Cir.1981); *Kadar Corp. v. Milbury,* 549 F.2d 230, 232 (1st Cir.1977). While defendants Alm and Ruckelshaus are each mentioned in one other paragraph, they are not alleged to have done anything which either directly or indirectly caused the asserted constitutional violations.

■ Defendant Alm, mentioned only in paragraph 37, is claimed to have told some of the plaintiffs at a meeting in 1984 that it was not the policy of the EPA to conduct a criminal investigation or prosecution of a company that was engaged in voluntary compliance efforts. This reiteration by Alm of an alleged EPA policy (a policy which plaintiffs assert was wrongfully not applied in their case) is insufficient to link Alm with the institution of the challenged prosecution in violation of this policy. The sole allegation regarding defendant Ruckelshaus is that he is a well-known anti-gun activist with a long history of participation in crusades to eliminate handguns [8] who used the EPA to further his personal goals by trying to injure or put KWT out of business. Paragraph 40. It is then alleged that unnamed employees of EPA, knowing of Ruckelshaus's commitment to his "cause", singled out plaintiffs for improper treatment in order to curry favor with him. *Id.* Thus, Ruckelshaus himself is not alleged to have actually done anything himself to plaintiffs based on his "antigun" views. Rather, unnamed employees allegedly acted improperly based on their perception of Ruckelshaus's opinion about the product KWT manufactures. Accordingly, under the standard described above, Ruckelshaus too cannot properly be found liable in this *Bivens* action.

The only remaining defendant is Philip Andrew, an EPA investigator. Unlike the other five supervisory defendants, allegations are made in the complaint concerning actions Andrew took in the underlying criminal investigation and prosecution of plaintiffs. However, for the following reasons, the Court finds that the allegations regarding Andrew do not state a cogniza-

---

**8.** "Exhibit P", which allegedly contains two news articles supporting this characterization of Ruckelshaus, is not attached to either the original or the amended complaint.

ble claim for the deprivation of plaintiffs' constitutional rights.

There are four paragraphs in the complaint in which actions on the part of Andrew are alleged. In paragraph 19, plaintiffs allege that Andrew interviewed David Allain of NHWSPCC regarding Allain's contacts with KWT and that Andrew "suppressed and concealed his [Allain's] testimony and even sought to convince Allain to change his testimony." *Id.* The complaint then refers to an attached "Exhibit B" as providing the basis for this allegation. Exhibit B is a memo prepared on August 16, 1984, by a private investigator hired by KWT's attorney relating the substance of an interview he had with Mr. Allain. Disregarding any potential hearsay problems, this memo simply does not support the conclusion drawn from it in paragraph 19 of the complaint. All Allain allegedly said regarding interaction with defendant Andrew was that Andrew had spoken with him, and he had to write a memo as a result thereof. *See* Exhibit B at 4. The words which imply that Andrew wanted Allain to change his recollection of events came from the private investigator, not Allain. *Id.* Since the document upon which plaintiffs base the allegations contained in paragraph 19 is not capable of the interpretation given it, the actions ascribed to Andrew in paragraph 19 cannot be the basis of a *Bivens* action against him.

■ Andrew is next mentioned in paragraph 41 of the complaint, wherein it is alleged that he illegally trespassed on KWT's property and took photographs thereof. Even if this allegation is proven, it is insufficient to establish a violation of plaintiffs' Fourth Amendment rights. The *Bivens* case itself involved an alleged Fourth Amendment violation. In recognizing an implied cause of action under the Constitution against the individual federal officers involved in the illegal search and seizure, the Court found the claim actionable because plaintiff had demonstrated an injury caused by the violation of his Fourth Amendment rights by defendants. *Bivens, supra,* 403 U.S. at 397, 91 S.Ct. at 2005. No injury is alleged by plaintiffs herein as

a result of Andrew's alleged trespass and photography. Moreover, the Fourth Amendment only protects those places in which a person has a reasonable expectation of privacy. *See Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). Plaintiffs do not allege that Andrew took pictures of anything that was not exposed to the public or of anything in which plaintiffs had an expectation of privacy. While the allegation contained in paragraph 41 could well give rise to a common-law tort action for trespass, the Court finds that it does not state a cognizable claim under the Fourth Amendment. *See Riggs v. Miller,* 480 F.Supp. 799, 803 (E.D.Va.1979) (allegations constituting state law claims for malicious prosecution and abuse of process insufficient to state constitutional claim).

■ In paragraph 43 Andrew is alleged to have given false testimony to the grand jury which returned the indictments against plaintiffs herein. It is well established that immunity is absolute for statements made on a witness stand. *See Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). In *Briscoe,* the Court found that a police officer alleged to have given perjured testimony at a criminal trial was absolutely immune in a subsequent action brought by the criminal defendant pursuant to 42 U.S.C. § 1983. *Briscoe* has been extended to a *Bivens*-type action where the allegedly perjured testimony was, as here, given before a grand jury. *See Briggs v. Goodwin,* 712 F.2d 1444, 1448–49 (D.C.Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984). Thus, the Court finds that Andrew is absolutely immune from liability for any statements he made before the grand jury.

Finally, in paragraph 44 plaintiffs allege that prior to a scheduled jury view in the underlying criminal action, Andrew went onto the premises of a business adjacent to the KWT facility and directed that a certain tire dam be removed, which materially altered the topography in a manner which was relevant to a defense raised by KWT in the criminal action. This same allegation formed the basis of a motion to dismiss

**96**

the indictment filed by the defendants (plaintiffs herein) in the criminal action. Judge Loughlin held a two-day evidentiary hearing regarding this issue, and in an Order dated July 1, 1985, he concluded that: several weeks before the scheduled jury view, Andrew, on his own initiative, entered the business property adjoining the KWT facility and ordered the manager thereof to have a so-called tire dam removed; the dam was removed sometime later, prior to the first day of the view (June 19, 1987), on June 19th defense counsel in the criminal action were aware that the dam had been removed, although at that time they did not know who had actually removed it; the Court was not notified prior to the view that conditions had changed, so it was unable to so instruct the jury; these events required that a mistrial be declared, but the motion to dismiss the indictment was denied, as the Government attorneys played no part in Andrew's actions, and the criminal defendants' attorneys could have cured the prejudice by bringing the event to the Court's attention in a timely fashion; and the order of a mistrial was rescinded, as both the defendants and the Government objected thereto. That same day, July 1, 1985, the parties entered into the previously-described plea agreement which led to the termination of the criminal proceedings.

■ This Court finds that plaintiffs do not state a claim for violation of their Fifth Amendment rights by herein raising the same allegations of Andrew's misconduct vis-a-vis the removal of the tire dam during the criminal prosecution. While the Court certainly does not condone such behavior on the part of Andrew, it is clear that the constitutional ramificatons of the event have already been addressed in the criminal action. Judge Loughlin found that dismissal of the indictment was not warranted, in part because of the failure of KWT's attorney to timely inform the court of the event so that the prejudice could be cured. Moreover, Judge Loughlin's order of mistrial was rescinded because neither party desired it, and the plea agreement was entered into the same day. Plaintiff's Fifth Amendment rights to due process and a fair trial were protected in the context of the criminal action. The Court does not find the allegations in paragraph 44 to assert injury caused by a constitutional violation such as is required to maintain a *Bivens* action. Thus, having found that none of the four allegations regarding defendant Andrew state cognizable *Bivens* claims, this count (Count I) must be dismissed as to him as well.

*Conclusion*

In summary, for the reasons hereinabove stated, the Court finds that those counts of the amended complaint which assert claims against the remaining six individual federal defendants (Counts I, II, and III) do not state claims upon which relief can be granted. Accordingly, defendants' motion to dismiss (document no. 22) must be and it herewith is granted.

SO ORDERED.